**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| STUDENTS ENGAGED IN ADVANCING TEXAS; M.F., *by and through next friend* VANESSA FERNANDEZ; *and* Z.B., *by and through next friend* S.B., <br><br> *Plaintiffs*, <br><br> v. <br><br> KEN PAXTON, *in his official capacity as the Texas Attorney General*, <br><br> *Defendant*. | Civil Action No. 1:25-cv-1662 |

**DECLARATION OF HAYDEN COHEN IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

I, Hayden Cohen, declare as follows:

1. I am the State Policy Director of Students Engaged in Advancing Texas ("SEAT"), a coalition of Texas middle-school to college-age students who seek to increase youth visibility and participation in policymaking. I make this declaration from personal knowledge.

2. SEAT provides students with hands-on opportunities for engaging in advocacy, legislative efforts, and education on issues of importance to young people—thereby driving civic transformation and the betterment of Texas communities.

3. SEAT is actively engaged in federal, state, and local politics in Texas. SEAT's members regularly testify at school board meetings and state legislative sessions regarding a variety of issues, including school funding initiatives, protecting LGBTQ+ youth, and safeguarding students' rights to free speech and expression at school. SEAT encourages and prepares students to take ownership of their education, lives, and political activities to prepare

them for informed and engaged citizenship, and to empower them to make change in their communities. SEAT also educates students about their First Amendment rights.

4. SEAT is an organization with over 300 formal members, including SEAT's nine-person leadership team. SEAT's nine-person leadership team is composed almost entirely of minor Texas students, with only four members over the age of 18. In addition to its 290 formal members, SEAT also engages informally with its constituency of students across Texas in relation to specific activations and events. SEAT's monthly social media audience is estimated at over 250,000.

5. I own a smartphone that connects to an app store and through which I can use mobile apps. Every member of the SEAT leadership team also owns a smartphone connected to an app store and enabled with mobile apps. The vast majority of our members use app-enabled smartphones as well.

6. In addition to its in-person political activities, SEAT maintains social media platforms to connect students—in Texas and throughout the United States—around the common goal of protecting students' rights. Specifically, SEAT maintains social media accounts on Facebook, X, LinkedIn, TikTok and, most importantly, Instagram, where SEAT has amassed a community of over 3,800 followers. Because Instagram is designed as a mobile app-based platform and does not have the same functionality when accessed via browser, I and other SEAT leadership prepare and make posts using the Instagram mobile app. It is my understanding and belief that for the same reasons, our Instagram audience overwhelmingly accesses our Instagram content via mobile apps.

7. As of August 2025, 11.2% of SEAT's Instagram audience was comprised of users aged 13-17.[1] In fact, SEAT often receives direct messages from minors on Instagram, including,

---

[1] These are the most recent demographics I can access, as Instagram no longer provides access to this information.

for example, school leaders seeking information about attending SEAT-hosted events in support of social advocacy activities or students facing civil rights and discrimination issues in their schools.

8. SEAT's members and leadership use the platform Slack, including specifically the Slack mobile app, to communicate internally and to coordinate advocacy efforts. We encourage our members to use Slack on their phones (rather than on computers) because it allows those members to receive notifications and communications in real time, ensuring their participation is up to the minute. Because of this, and because of the lifestyles and habits of students, it is my expectation that our members largely use Slack's mobile app to engage in SEAT Slack communications. Nearly 50% of SEAT's Slack community members are minors.

9. SEAT's leadership and members at large also use communication apps GroupMe and Signal to coordinate political action and receive vital information from collaborators and other politically minded groups, such as MOVE Texas. Like Slack, GroupMe and Signal are most functional as mobile apps.

10. The Texas App Store Accountability Act, 2025 Tex. Sess. Law Serv. Ch. 125 (the "Act") will have significant effects on SEAT's ability to reach students and accomplish its mission. I understand the Act will require all users to verify their ages, and will require minors to also link to a parent account—which must also verify legal parental authority—and obtain parental consent before downloading any app. Because of this, the Act will presumptively block all Texans, and especially minor Texans, from accessing the social media and communication applications that SEAT uses to reach its current and prospective members. That block to access will remain in place with respect to any individual who is not willing to share their age information with apps, and any minor who cannot obtain the necessary verifications and consents from their parent or guardian.

SEAT will therefore be unable to share information that is vitally important to Texas youth—including informational materials on Texas policies that affect education, flyers, opportunities for youth civic engagement, and resources discussing the impacts of SEAT's work—to its intended audience via the channels most likely to reach them. These consequences would have a material negative impact on SEAT's ability to accomplish its mission.

11. For example, on April 29, 2025, SEAT used its Instagram account to co-post a slideshow advocating for Texas HB 1405, which aimed to broaden the definition of bullying to include the targeting and harassment of students based on characteristics like religion, race, disability status, and sex, as well as to expand the definition of cyberbullying to include the use of artificial-intelligence-based communication tools. Because cyberbullying is a particular concern to students, and especially minor students, it was important to us for this post to reach those demographics. Below is a true and correct screenshot of this Instagram post as seen by users of the Instagram mobile app[2], which I believe many Texans, especially minor Texans, would no longer be able to view if the Act takes effect:

---

[2] Note that the entirety of the post does not fit on the screen when viewing from the Instagram mobile app. The remainder of the caption reads: "Read these horrific stories from across the state. Thank you to the incredible organizations that signed on to support this bill. #txledge #bullying #texas"



12.     SEAT has also used its platform to provide students with information on how to give public testimony before the Texas legislature, which included information about how to locate upcoming hearings, research members of the legislature, and prepare effective testimony in support of or against pending bills. Below is a true and correct screenshot of this April 13, 2025 Instagram post as seen by users of the Instagram mobile app, which I believe many Texans, especially minor Texans, would no longer be able to view if the Act takes effect:



13.     Because the Act requires parental consent for each individual application download by minors, minors looking to access SEAT's resources on its social media channels—or those who wish to participate in SEAT's internal organizing via Slack—would be unable to do so if, for any number of reasons, they cannot obtain the required consent.  And even minor students who had obtained parental consent might have their access revoked if the social media or Slack app undergoes a "material change" pursuant to the Act.  Such an outcome would prevent young people and students from receiving important information about the policies and laws that directly affect their school experiences and education.

14.     For example, SEAT hosts an advocacy day during the legislative session that gives students across Texas the opportunity to visit the Texas State Capitol to meet with their representatives, participate in advocacy workshops, and attend educational programming

regarding the legislative process. This event is advertised on SEAT's social media accounts and coordinated using Slack. SEAT also uses a number of apps to organize the logistics of this and other events. For example, SEAT encourages its members to use tools like Hitch and Uber, which are optimized for mobile app use, to coordinate carpooling and transportation for SEAT's advocacy days and school board meetings across the state of Texas.

15. The Act could prevent minor participants from even being aware of these opportunities, and render minors interested in participating unable to receive information vital to that participation, by presumptively barring them from the app-based channels through which key information is shared. It could also prevent them from taking advantage of the resources SEAT provides to facilitate their advocacy.

16. The Act could also prevent minors on SEAT's leadership team from carrying out their duties, and has the potential to cut SEAT off from vital coalitional resources. For example, SEAT's Federal Policy Director, who is a minor, uses the mobile app Signal to share information with SEAT's partners, members, and prospective members, coordinate strategy, and receive on-the-ground updates from other student groups across Texas. These Signal communications keep him abreast of planned interactions with lawmakers, demonstrations, and opportunities for advocacy on behalf of students, and allow him to act as a planning and information hub. If he is barred from Signal or has his access revoked, he will be prevented from engaging in these critical communications, threatening SEAT's ability to effectively organize.

17. The Act's parental consent requirement also negatively affects SEAT's audience and constituency at large, which is composed of students all over Texas (and beyond). The requirement inherently prevents teens from communicating freely with their peers and organizations via the channels of their choice. With large swaths of teens unable to use certain

7

applications, such as communication apps like Instagram, Signal, or Slack, students will be unable to share or receive information in the formats they wish and with their full intended audience. SEAT's constituency of minor students will be left with far fewer—and far more limited—means of communication. SEAT and its members frequently share interactive social media posts, like the slideshow Instagram posts above, to convey important information about their advocacy efforts and educational resources to students who are directly affected by the issues about which SEAT advocates. These communications are designed for app-based channels, and I am not aware of any non-app-based channels that provide for a comparably robust and immediate exchange of information. Thus, if the Act goes into effect, SEAT will also be unable to engage in its best means of communication with its full intended youth audience, and SEAT, its youth membership, and young, non-member Texans alike would be burdened by the need to find and use alternative, less effective means of conveying or receiving such information.

18. In sum, the Act threatens the ability of SEAT and its minor members and constituents to engage politically and to take an active role in the policy and political decisions in which they have a direct stake, diminishing their agency and involvement in the democratic process.

I declare under penalty of perjury that the foregoing is true and correct.

Signed in Houston, Texas this 14th day of October, 2025.

                                                            _____
                                                                 Hayden Cohen