# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

STUDENTS ENGAGED IN ADVANCING
TEXAS; M.F., *BY AND THROUGH NEXT
FRIEND* VANESSA FERNANDEZ; AND Z.B.,
*BY AND THROUGH NEXT FRIEND* S.B.,

    *Plaintiffs,*

v.

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF TEXAS,

    *Defendant.*

CASE NO. 1:25-CV-01662-RP

## KEN PAXTON'S MEMORANDUM RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ 2

Index of Authorities ............................................................................................................3

Introduction ........................................................................................................................ 8

Statement of the Case ......................................................................................................... 9

Standard ..............................................................................................................................10

Summary Of Argument........................................................................................................ 11

Argument .............................................................................................................................12

   I.   Plaintiffs Are Unlikely To Prevail On The Merits Of Its First Amendment  Claims. ......12

     A. S.B. 2420's Age Verification, Account Linking, and Parental Consent Requirements Do Not Violate the First Amendment....................................................................................12

       1.  The Age Verification Requirement Does Not Violate the First Amendment............12

       2. S.B. 2420's Parent Account Linking Requirement Does Not Violate the First Amendment.........................................................................................................................18

     B. S.B. 2420 Is Not a Prior Restraint. ................................................................................ 22

     C. S.B. 2420 Does Not Facially Violate the First Amendment............................................23

     D. S.B. 2420's Age Rating Requirements Do Not Violate the First Amendment. ............ 24

   II.  The Remaining Factors Do Not Favor A Preliminary Injunction. .....................................25

     A. Plaintiffs Cannot Show Irreparable Injury. ....................................................................25

     B. The Balance of the Equities and the Public Interest also favor the enforcement of S.B. 2024. ....................................................................................................................................25

   III. The Age Verification, Parental Verification, Parental Consent, and Age Rating Provisions Are Severable From One Another And From S.B. 2420 As A Whole. ............................ 26

Certificate of Service........................................................................................................... 28

## INDEX OF AUTHORITIES

**Cases**

*Alaimalo v. United States,*
    645 F.3d 1042 (9th Cir. 2011) ...................................................................................23

*Alexander v. United States,*
    509 U.S. 544 (1993) .....................................................................................................23

*Anderson v. Jackson,*
    556 F.3d 351 (5th Cir. 2009) ....................................................................................12

*Bantam Books, Inc. v. Sullivan,*
    372 U.S. 58 (1963) .................................................................................................23, 24

*Barr v. Am. Ass'n of Political Consultants,*
    591 U.S. 624 (2020) ...............................................................................................27, 28

*Boos v. Barry,*
    485 U.S. 312 (1988) ...............................................................................................17, 22

*Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York,*
    447 U.S. 557 (1980) .....................................................................................................18

*Chaplinsky v. New Hampshire,*
    315 U. S. 568 (1942) ....................................................................................................18

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,*
    596 U.S. 61 (2022) .......................................................................................................10

*City of Renton v. Playtime Theatres, Inc.,*
    475 U.S. 41 (1986) .......................................................................................................17

*Clark v. Prichard,*
    812 F.2d 991 (5th Cir. 1987) ....................................................................................12

*District of Columbia v. Heller,*
    554 U. S. 570 (2008) ....................................................................................................18

*Erznoznik v. City of Jacksonville,*
    422 U.S. 205 (1975) .....................................................................................................15

*Farrington v. Tokushige,*
    273 U.S. 284 (1927) ................................................................................................... 20

*Florida Bar v. Went for It,*

515 U.S. 618 (1995) ...................................................................................................19

*Free Enterprise Fund v. Public Company Accounting Oversight Bd.*,
561 U. S. 477 (2010) ................................................................................................ 28

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025) ...........................................................................................15, 25

*Free Speech Coalition, Inc. v. AG of the United States*,
677 F.3d 519 (3rd Cir. 2012) .................................................................................17

*Ginsberg v. New York*,
390 U.S. 629 (1968) ........................................................................... 14, 15, 16, 21

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ................................................................................................23

*Harrison v. Ollison*,
519 F.3d 952 (9th Cir. 2008) .................................................................................23

*In re: Tenn. Pub. Indecency Statute*,
*Nos. 96-6512, 96-6573, 97-5924, 97-5938*, 1999 U.S. App. LEXIS 535, 1999 WL 55276 at *4
(Jan. 13, 1999)....................................................................................................22, 23

*Mayo Found. for Med. Educ. & Research v. BP Am. Prod. Co.*,
447 F. Supp. 3d 522 (N.D. Tex. 2020). ..............................................................12

*Moody v. Netchoice, LLC* (*Netchoice II*),
144 S. Ct. 2383 (2024) ........................................................................................... 24

*NetChoice v. Bonta*,
761 F. Supp. 3d 1202 (N.D. Cal. 2024)...............................................................21

*NetChoice, Inc. v. Paxton*,
49 F.4th 439 (5th Cir. 2022) .................................................................................18

*Nken v. Holder*,
556 U.S. 418 (2009) ................................................................................................12

*Pavatt v. Carpenter*,
928 F.3d 906 (10th 2019) ......................................................................................23

*Pierce v. Soc'y of Sisters*,
268 U.S. 510 (1925) ............................................................................................... 20

*Regan v. Time, Inc.*,
468 U. S. 641 (1984)............................................................................................... 28

*Sorrell v. IMS Health, Inc.*
  564 U.S. 552 (2011) ..............................................................................16, 17, 21

*Turner Broadcasting System, Inc. v. FCC,*
  512 U. S. 622 (1994) ..................................................................................15, 17

*Turner Broadcasting System, Inc. v. FCC,*
  520 U. S. 180 (1997) (*Turner II*) ....................................................................18

*U.S. v. Salerno,*
  481 U.S. 739 (1987) ........................................................................................25

*United States v. Benson,*
  561 F.3d 718 (7th Cir. 2009) ...........................................................................18

*United States v. Hansen,*
  599 U. S. 762 (2023) .......................................................................................25

*United States v. O'Brien,*
  391 U.S. 367 (1968) .........................................................................................17

*United States v. Stevens,*
  559 U. S. 460 (2010) ........................................................................................18

*United States v. Symington,*
  195 F.3d 1080 (9th Cir. 1999)...........................................................................23

*Valley v. Rapides Parish School Bd.,*
  118 F.3d 1047 (5th Cir. 1997) ..........................................................................12

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) .............................................................................. 16, 19, 23

*Wash. State Grange v. Wash. State Republican Party,*
  552 U.S. 442 (2008).........................................................................................25

*Wisconsin v. Yoder,*
  406 U.S. 205 (1972) ........................................................................................ 20

*Zbaraz v. Madigan,*
  572 F.3d 370 (7th Cir. 2009) ...........................................................................16

### Statutes

16 Tex. Admin. Code § 31.4.................................................................................14

Cal. Health & Safety Code, § 25249.6 ...............................................................25

Tex. Alco. Bev. Code § 106.01–03 .................................................................................14

Tex. Bus. & Com. Code § 121.021 .................................................................................18

Tex. Bus. & Com. Code § 121.022 .................................................................................11

Tex. Bus. & Com. Code § 121.023(a) .............................................................................11

Tex. Bus. & Com. Code § 121.023(b) .............................................................................11

Tex. Bus. & Com. Code § 121.024 .................................................................................11

Tex. Bus. & Com. Code § 122.022 .................................................................................19

Tex. Bus. & Comm. Code § 121.021(f)(1)(C) ................................................................ 28

Tex. Bus. & Comm. Code § 121.053(a) .......................................................................... 22

Tex. Bus. & Comm. Code § 121.053(b)(4) ..................................................................... 22

Tex. Civ. Prac. & Rem. Code §129.001 ..........................................................................14

Tex. Elec. Code § 11.002(a) ...........................................................................................13

Tex. Fam. Code § 2.003(a) .............................................................................................13

Tex. Health & Safety Code §161.082(a) .........................................................................14

Tex. Health & Safety Code §161.084 .............................................................................14

Tex. Penal Code § 46.06(a)(2) .......................................................................................14

**Other Authorities**

Ayden Runnels & Carla Astuldillo, *All 17 Texas Constitutional Amendments Pass*, The Texas

   Tribune ..................................................................................................................... 20

H.J of Tex. 89th Leg., R.S. 3578 (2025) ................................................................... 10, 11

H.J. of Tex. 89th Leg. R.S. 3721 (2025) .........................................................................10

S.J. of Tex. 89th Leg., R.S. 1326 (2025) .........................................................................10

S.J. of Tex. 89th Leg., R.S. 2888 (2025) ...........................................................................................10

S.J. Res. 34, 89th Leg., Reg Sess. (Tex. 2025) ...................................................................15, 20, 26

### Constitutional Provisions

U.S. CONST. Amend. XXVI..............................................................................................................13

## INTRODUCTION

The digital ecosystem flows through two companies—Apple and Google—whose tools allow for the ages of app store users to be identified. S.B. 2420 builds on these tools to allow parents maximum transparency to direct and supervise their children's purchases of apps.

Apple's App Store and Google's Play Store are the primary, near exclusive, source of downloadable apps. Implementing age verification at the app store level, where these companies already have Device ID logins, improves the safety of Texas children without the use of personal identifying information such as facial scans or biometric markers. Apple and Google already use a system of age limits for their products. Both companies are also subject to consent decrees with the Federal Trade Commission (FTC) requiring them to obtain express, informed consent of in-app purchases.[1] S.B. 2420 extends these existing validation protocols to app downloads. The app stores maintain users' personal data, which they will use to verify for application developers the user's age category and whether parental consent has been obtained. User data is thus further protected by having a limited number of app stores verify the user's data, instead of the countless application developers collecting user data or using third-party verifiers. S.B. 2420 also requires app store providers to safeguard users' age data,[2] adding a further layer of protection.

The SEAT Plaintiffs are not entitled to a preliminary injunction. Plaintiffs incorrectly claim that much of what is covered by S.B. 2420 is speech. S.B. 2420 regulates conduct, not content, and

---

[1] Federal Trade Commission, *Press Release: FTC Approves Final Order in Case About Google Billing Kids' In-App Charges Without Parental Consent* (Dec. 5, 2014), ftc.gov/news-events/news/press-releases/2014/12/ftc-approves-final-order-case-about-googlebilling-kids-app-charges-without-parental-consent [perma.cc/Q76S-TN5W]; Federal Trade Commission, *Press Release: FTC Approves Final Order in Case About Apple, Inc. Charging for Kids' In-App Purchases Without Parental Consent* (Mar. 27, 2014), ftc.gov/news-events/news/press-releases/2014/03/ftc-approves-final-ordercase-about-apple-inc-charging-kids-app-purchases-without-parental-consent [perma.cc/C8ZQ-HQAY].

[2] Tex. Bus. & Comm. Code § 121.025.

applies to all contracts minors may wish to enter on an app store. The Act does not "single out any topic or subject matter for differential treatment."[3] Further, the SEAT Plaintiffs cannot satisfy the preliminary injunction factors. Plaintiffs' request for preliminary injunction should therefore be denied.

## STATEMENT OF THE CASE

S.B. 2420, the App Store Accountability Act, Tex. Bus. & Com. Code § 121.001 *et seq.*, was signed by Governor Greg Abbott on May 27, 2025.[4] The Act was passed with broad bipartisan support—all but one Senator voted for the Act[5] and it received 120 Yeas against Nine Nays in the House.[6] This Act takes effect January 1, 2026. S.B. 2420 "requires parental approval and establishes age-verification standards for app stores. It restores parental empowerment."[7]

S.B. 2420 applies age verification standards that exist in brick-and-mortar stores to the digital world. Texas Representative Caroline Fairly, a co-sponsor of the Act, remarked on the House floor that S.B. 2420 contains "really two key elements I want to address in this bill. The first one is contractual agreements. When parents and kids download apps, they are entering into a contractual agreement—essentially giving over their data to Big Tech, who then sells it online. The other part of this bill that's really important is transparency. Parents deserve to have access to the information about the apps that their kids are downloading."[8]

The Act requires the owners of app stores to "use a commercially reasonable method of

---

[3] *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 71 (2022).
[4] S.J. of Tex. 89th Leg., R.S. 2888 (2025).
[5] S.J. of Tex. 89th Leg., R.S. 1326 (2025).
[6] H.J. of Tex. 89th Leg. R.S. 3721 (2025).
[7] H.J of Tex. 89th Leg. R.S. 3578 (2025).
[8] *Id.*

verification" to identify an individual's age. Tex. Bus. & Com. Code § 121.021(a). The accounts of minor children are linked to their parent's or guardian's account. Tex. Bus. & Com. Code § 121.022. When the child wishes to download a new app, their "parent gets a notification, which then has the new age ratings . . . . And then the parent decides and can respond yes or no if they want their kid to download this app."[9]

If an app store owner has a mechanism for displaying an age rating or other content notice, its owners shall "make available to users an explanation of the mechanism and display for each software application available for download and purchase on the app store the age rating and other content notice." Tex. Bus. & Com. Code § 121.023(a). If the app store owner does not have a mechanism for displaying an age rating or other content, they shall display the rating assigned to the software application under Sec. 121.052 and the content or other elements that led to the assigned rating. Tex. Bus. & Com. Code § 121.023(b).

S.B. 2420 only applies to app purchases by minors in Texas.[10] App store owners violate the Act if they enforce a contract against a minor without parental consent, knowingly misrepresent to parents information regarding the app their child wishes to download, or improperly share a user's personal data obtained for purposes of the Act.

## STANDARD

The District Court has discretionary power to issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. Injunctive relief however "is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of

---

[9] *Id.* at 3585.
[10] *Id.* at 3587; Tex. Bus. & Com. Code § 121.024.

10

persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (internal quotation omitted). Absent extenuating circumstances, no District Court should issue a preliminary injunction unless one is necessary to protect a plaintiff from irreparable injury or to preserve the court's power to render a meaningful decision after a trial on the merits. *Mayo Found. for Med. Educ. & Research v. BP Am. Prod. Co.*, 447 F. Supp. 3d 522, 527–28 (N.D. Tex. 2020).

The District Court should grant preliminary injunctions only when the plaintiff establishes the following: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest." *Valley v. Rapides Parish School Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997) (citing *Roho Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990). Though the balance of equities and public interest factors merge when a government is the opposing party, *Nken v. Holder*, 556 U.S. 418, 435 (2009), these four factors are nonetheless conjunctive—a plaintiff must carry its burden as to all four factors before a preliminary injunction may be considered, *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

## SUMMARY OF ARGUMENT

This Court should not grant Plaintiffs' request for preliminary injunction because Plaintiffs can carry none of the four factors required for such relief.

*First*, Plaintiffs are unlikely to succeed on the merits: S.B. 2420 is not vague, does not compel speech, is not a prior restraint, or otherwise violate the First Amendment. *Second*, Plaintiffs can show no irreparable harm that would be prevented by a preliminary injunction. The Apple and

Google app stores already issue age ratings of the various apps they carry. The Act only requires app stores owners to use existing tools to provide more transparency to parents and protect children's safety. *Third*, Plaintiffs cannot satisfy the merged balance of equites and public interest factors. S.B. 2420 affirms the rights of parents to care for and make decisions for their children and maximizes the ability of parents to do that it by requiring app stores to provide parents with information about apps that children may wish to download.

ARGUMENT

## I.    PLAINTIFFS ARE UNLIKELY TO PREVAIL ON THE MERITS OF ITS FIRST AMENDMENT CLAIMS.

Plaintiffs are unlikely to prevail on the merits of its First Amendment claims against S.B. 2420, on the basis that S.B. 2420's various requirements for age verification, parental linking and consent, and the issuance of accurate age ratings of apps are unconstitutional.

### A.    S.B. 2420's Age Verification, Account Linking, and Parental Consent Requirements Do Not Violate the First Amendment.

#### 1.    The Age Verification Requirement Does Not Violate the First Amendment.

Many of Americans' most important civil rights are restricted to minors. Voting, the foundation of American democracy, is limited to those who have attained the age of eighteen, both at the federal and state level. U.S. CONST. Amend. XXVI; Tex. Elec. Code § 11.002(a). In Texas, the right to marry is restricted to those who reach the age of eighteen, with only limited exceptions.[11] Texas also makes it an offense to sell, rent, or even give a person under 18 years of

---

[11] Tex. Fam. Code § 2.003(a) ("A person under 18 years of age may not marry unless the person has been granted by this state or another state a court order removing the disabilities of minority.").

age a firearm—and notably, in a fashion that mirrors S.B. 2420's parental consent requirement— unless the minor's parent or guardian has given written permission for the sale or effective consent for the transfer.[12]

Many products and services, particularly those which pose health hazards, or which may be addictive, are subject to age-based regulations, not all of which are based around the general age of majority. Generally, in Texas, the age of majority is 18 years of age.[13] However, some products are deemed so dangerous that the age of majority to be able to legally purchase or consume the product has been raised above the general age of majority. For example, Texas prohibits the sale of alcoholic beverages to "minors" under 21 years of age.[14] Likewise, Texas prohibits the sale of cigarettes, e-cigarettes, and tobacco products to "minors" under 21 years of age.[15] Sellers of both products are required to disclose the risks those products pose.[16] Surely, companies trying to sell these products would also rather not advertise product risks, yet, society recognizes the dangers of these products as significant enough to compel disclosures of the dangers.

These restrictions can constitutionally apply even to products which constitute First Amendment protected speech. Restrictions on minor access to content obscene as to minors, including when paired with a requirement of age verification, have been upheld by the Supreme Court more than once. *See Ginsberg v. New York*, 390 U.S. 629 (1968) (upholding a New York law prohibiting the sale of sexual content obscene to minors); *see also Free Speech Coal., Inc. v. Paxton*,

---

[12] Tex. Penal Code § 46.06(a)(2) (regarding minors and firearms); (c) (requiring parental consent regarding firearms and minors).
[13] Tex. Civ. Prac. & Rem. Code §129.001.
[14] Tex. Alco. Bev. Code § 106.01–03.
[15] Tex. Health & Safety Code §161.082(a).
[16] *See* Tex. Health & Safety Code §161.084 (requiring health warning signs for tobacco sellers); 16 Tex. Admin. Code § 31.4 (requiring health warning signs for alcohol sellers).

13

606 U.S. 461, 499 (2025) (hereinafter "*Free Speech II*") (upholding a Texas law requiring age

verification from internet companies). In sum, states already impose a variety of age restrictions

and disclosure requirements. S.B. 2420's requirements are not categorically different.

### a. Texas Has a Strong Interest in Protecting Children.

Age verification with respect to varied types of media, specifically including online content,

has been accepted as reasonable and constitutional. *Free Speech II* at 480, 481 (2025).[17] The well-

being of its children is of course a subject within the State's constitutional power to regulate, with

the state having a well understood strong interest in protecting children. *Id.* at 640; *see also* S.J. Res.

34, 89th Leg., Reg Sess. (Tex. 2025).[18] The well-being of its children is of course a subject within

the State's constitutional power to regulate, with the state having a well understood strong interest

in protecting children. *Ginsberg*, 390 U.S. at 640. Because of this interest in protecting children,

"[i]t is well settled that a State or municipality can adopt more stringent controls on

communicative materials available to youths than on those available to adults." *E.g.*, *Erznoznik v.*

*City of Jacksonville*, 422 U.S. 205, 212 (1975); *Ginsberg,* 390 U.S. at 641.

### b. Age Verification Requirement, Parental Consent, and Parental Account Linking Are Content Neutral, Not Content Based.

As the Supreme Court has acknowledged, "deciding whether a particular regulation is

content-based or content-neutral is not always a simple task." *Turner Broadcasting System, Inc. v.*

---

[17] That case dealt with another Texas statute requiring age verification for the protection of minors, allowing—as here—a vendor to use a "commercially reasonable method" to do so. *Id.*
[18] Added as an amendment to the Texas constitution: "To enshrine truths that are deeply rooted in this nation's history and traditions, the people of Texas hereby affirm that a parent has the responsibility to nurture and protect the parent's child and the corresponding fundamental right to exercise care, custody, and control of the parent's child, including the right to make decisions concerning the child's upbringing."

*FCC*, 512 U.S. 622, 642 (1994) . To determine whether a statute is content neutral, the principal inquiry in speech cases generally—and in time, place, or manner cases in particular—is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. *American Library Ass'n v. Reno*, 33 F.3rd 78, 84 (D.C. Circuit 1994). Government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, (1976) (citations omitted)).

The Act in this case gives parents authority to supervise their children's usage of applications social media usage but does not grant the state of Texas authority to either monitor an application or deny any person—minor or adult—from using one. That decision is properly left up to the parent. *See generally Ginsberg*, 390 U.S. at 640.

The age verification process does not therefore create a First Amendment issue. These sections don't regulate Plaintiffs' content moderation, so they don't implicate their First Amendment speech rights. While a parent can limit a minor's app usage with the Act's authority; it would not be the State doing the restricting. *See Sorrell v. IMS Health, Inc.* 564 U.S. 552, 573 (2011) ("[P]rivate decision making can avoid governmental partiality and thus insulate privacy measures from First Amendment challenge."); *Zbaraz v. Madigan*, 572 F.3d 370, 388 (7th Cir. 2009). To the extent this is even a First Amendment restriction, it is justifiable under any level of scrutiny. Plaintiffs' real complaint is about the cost of compliance; they couch it in First

Amendment terms because they are aware that they are not exempt from ordinary business regulations simply because First Amendment activity occurs on their platforms. *See Sorrell*, 564 U.S. at 567. Moreover, Google and Apple already require age verification to access their app stores, do allow parental approval, and rate and group their apps into age categories already—any alleged burden to them would be *de minimis*.

The Supreme Court has also held that when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. *United States v. O'Brien*, 391 U.S. 367 (1968). As an example, the law analyzed in *Renton* by the Supreme Court treated "adult" theaters differently from others in where they could operate. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986). Despite this, the law—which had the purpose of preventing crime—a secondary effect—was not directly aimed at the content of the films shown. *Id.*; *see also Reno*, 33 F.3d at 85.

In this case, the Act's purpose is specifically to protect minors and to provide parents with the information and means to do so. The Act should therefore be properly analyzed as content neutral. *Boos v. Barry*, 485 U.S. 312, 320 (1988); *O'Brien*, 391 U.S. at 377; see also *Free Speech Coalition, Inc. v. AG of the United States*, 677 F.3d 519, 530 (3rd Cir. 2012). Content-neutral laws "are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." *Turner Broadcasting System, Inc. v. FCC*, 512 U. S. 622, 642 (1994) (citation omitted). Under that standard, a law will survive review "if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests."

*Turner Broadcasting System, Inc. v. FCC*, 520 U. S. 180, 189 (1997) (*Turner II*) (citing *O'Brien*, 391 U.S., at 377).

>   **c. Even Assuming Arguendo Age Verification and Parental Approval/Linking Could Be Considered Content Based, H.B. 2420 Is Still Constitutional under Intermediate Review.**

First, certain types of material have historically had no First Amendment Protection. *Free Speech II*, 606 U.S. at 471. These types of expression—such as "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct"—have been understood to fall outside the scope of the First Amendment. *United States v. Stevens*, 559 U. S. 460, 468 (2010) (citations omitted). States generally may prohibit speech of this kind without "rais[ing] any Constitutional problem." *Chaplinsky v. New Hampshire*, 315 U. S. 568, 571-572 (1942). Such prohibitions are subject only to rational-basis review, the minimum constitutional standard that all legislation must satisfy. *See District of Columbia v. Heller*, 554 U. S. 570, 628, n. 27 (2008). Any application with such material would fall into this category; states have the right to prevent the provision of obscene materials to children. *Free Speech II*, 606 U.S. at 472, 474 (citing *Ginsburg*, 390 U.S. at 637-38).

Second, the Act itself requires age verification to be done by owners of an "app store." Tex. Bus. & Com. Code § 121.021. These stores are commercial enterprises and generate income from app purchases and from advertising based on persons coming to their virtual store to make purchases. The stores are commercial enterprises and at most, the Act could be seen as incidentally affecting commercial speech. *see generally NetChoice, Inc. v. Paxton*, 49 F.4th 439, 485-88 (5th Cir. 2022). Commercial speech receives lesser First Amendment protection than "core" speech, such as political expression. *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 562-63 (1980); *see also United States v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009). Even

where directly regulated—and not just incidentally burdened, as here—restrictions on commercial speech are only entitled to intermediate scrutiny. *See*, *e.g.*, *Florida Bar v. Went for It*, 515 U.S. 618, 624 (1995).

For a similar Texas law, H.B. 1181, the Supreme Court recently determined that an age-verification requirement for websites with sexual content was appropriate under intermediate scrutiny. *Free Speech II*, 606 U.S. at 483.

> [A]dults have no First Amendment right to avoid age verification, and the statute can readily be understood as an effort to restrict minors' access. Any burden experienced by adults is therefore only incidental to the statute's regulation of activity that is not protected by the First Amendment. That fact makes intermediate scrutiny the appropriate standard under our precedents.

*Id.* (citing *Boy Scouts of America v. Dale*, 530 U. S. 640, 659 (2000)). Although the strength of Texas' interest and the lack of any real burdens on speech would allow Texas to pass a strict scrutiny analysis, any burden imposed by age verification is only incidental and does not justify strict scrutiny. *Id.* "Strict scrutiny therefore cannot apply to laws, such as in-person age-verification requirements, which are traditional, widespread, and not thought to raise a significant First Amendment issue." *Id.* at 485.[19]

### 2.    S.B. 2420's Parent Account Linking Requirement Does Not Violate the First Amendment.

If a user is found to be under 18, app stores must then link the minor's account with an account belonging to a parent or guardian. Tex. Bus. & Com. Code § 122.022. Plaintiffs admit that Apple, Google, and Amazon already provide protections for any app directed at children. This

---

[19] Texas is therefore not required to adopt the least restrictive means of advancing its interests to pass scrutiny. *Ward*, 491 U. S. at 800. It is sufficient that verifying age by government identification and transactional data is a legitimate legislative choice that does not impose excessive burdens on users. *Free Speech II*, 606 U.S. at 498.

includes allowing parents to lock screens, block apps, and filter by the already existing age categories (that closely match the ones used by Texas within H.B. 2420). Plaintiffs have failed to show that linking a parental account to a minor's is a burden or otherwise violates the Constitution. As shown above, even adults do not have a First Amendment right to avoid verifying their age. *Free Speech II*, 606 U.S. at 483. And the statute can readily be understood as an effort to protect minors. Any burden experienced by adults is therefore only incidental to the statute's regulation of activity that is not protected by the First Amendment.

### d. Parental Control Is a Fundamental Value and Right.

Just this week, Texas voters "enshrine[d]" the following "truths that are deeply rooted in this nation's history and traditions," into the Texas Constitution: "a parent has the responsibility to nurture and protect the parent's child and the corresponding fundamental right to exercise care, custody, and control of the parent's child, including the right to make decisions concerning the child's upbringing." S.J. Res. 34, 89th Leg., Reg Sess. (Tex. 2025).[20]

The courts have long recognized a parent's fundamental right to direct the upbringing of their children. *See Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972); *Farrington v. Tokushige*, 273 U.S. 284, 298 (1927); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925). The Act in this case forwards both the state's interest in protecting children from objectionable material, while also empowering parents to practically use their authority in determining how to raise their child.

As pointed out above, the state is not banning any material nor preventing any person—

---

[20] *See also* Ayden Runnels & Carla Astuldillo, *All 17 Texas Constitutional Amendments Pass*, The Texas Tribune, https://www.texastribune.org/2025/11/04/texas-constitution-amendments-propositions/ (Nov. 5, 2025, 2:55 PM) (showing voting results regarding the 2025 proposed amendments to the Texas Constitution).

whether parent or child—from receiving an app. The law merely provides parents with information that they can use to protect their children from objectionable material. This is precisely the type of decision that should normally be left up to the parents. *See generally Ginsberg*, 390 U.S. at 640. While a parent can limit a minor's app usage with the Act's authority; it would not be the State doing the restricting. *See Sorrell v. IMS Health, Inc.* 564 U.S. at 573.

Nor does the decision in *Brown* require the Act to pass strict scrutiny, although the strength of the state's interest and the lack of any real burden would allow it to pass such a test. *See NetChoice v. Bonta*, 761 F. Supp. 3d 1202, 1216 (N.D. Cal. 2024) (citing *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799-804 (2011)). The *Bonta* court recognized that previous decisions were driven by the technology at the time and that the rapid pace of development could easily make past factual determinations—such as the burden of age verification—inapplicable. *See generally Bonta*, 761 F. Supp. at 1209, 1216-17.

Indeed, "the Supreme Court has expressly declined to hold that governments are 'incapable of enacting any regulation of the Internet designed to prevent minors from gaining access to harmful materials.'" *Id.* at 1216 (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 672 (2004)). Further, the Supreme Court has upheld regulations that restricted speech as to minors but not to adults. *See*, *e.g.*, *Ginsberg*, 390 at 629. And in 2025, the court analyzed age-related restrictions on internet use using the intermediate scrutiny standard. *Free Speech II*, 606 U.S. at 499.

### i.    The Term "Material[] Change[]" Is Not Unconstitutionally Vague

Plaintiffs have challenged Tex. Bus. & Comm. Code §§ 121.022 and 121.053, alleging that its requirement that a developer notify a supervising adult when an application "materially

changes" the functionality or user experience of the software application is unreasonably vague. This contention fails to take the phrase "material[] change[]" in context. Tex. Bus. & Comm. Code § 121.053(b)(4). Within Section 121.053, H.B. 2024 requires the developer of a software application to provide notice when making any "significant change" to the terms of service or privacy policy of the software. *Id*. at 121.053(a). These "significant changes" are listed: (1) the type of personal data collected, stored, or shared; (2) changes the age rating assigned to it; (3) adds now monetization; or (4) "materially changes the functionality or user experience. . . ." *Id*.

The phrase "material change" to the application—merely one category of the significant changes under the Act's language—must be read in tandem with the other listed significant changes in subsection 121.053(b); the specific items named by the Act provide guidance for how a "material change" is to be judged. Added to this is that the change must be "material" in light of the goals of the Act itself: protecting minors from unsuitable material.

When evaluating the vagueness of a statute, an undefined word or phrase does not render a statute void when a court can ascertain the term's meaning by reading it in context. *See Boos*, 485 U.S. at 332. From the other listed "significant" changes and the stated goals of the Act, a reasonable person can determine whether a change to an application is material or not.

An ordinance is void for vagueness only if a person of ordinary intelligence "cannot reasonably interpret what is prohibited." *In re: Tenn. Pub. Indecency Statute, Nos. 96-6512, 96-6573, 97-5924, 97-5938*, 1999 U.S. App. LEXIS 535, 1999 WL 55276 at *4 (Jan. 13, 1999) (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). "[I]t must be kept in mind that for a statute to be vague it must contain 'terms so vague that men of common intelligence must necessarily guess at its common meaning.'" *Id.* (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1929)). This is

simply not the case here. "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781 (1989). "[W]hen the meaning of a word or phrase is commonly understood, a statute's failure to define the term will not render the statute void for vagueness. The statute need not define with mathematical precision the conduct forbidden." *In re: Tenn.*, 1999 WL 55276 at *4. (internal citations omitted).

Judicial precedent is also relevant in construing the words of a statute in a vagueness challenge. *E.g.*, *Grayned*, 408 at 110; *National Advertising*, 912 F.2d at 411. The term "material change" is used by courts in various contexts as a reasonably clear measure in numerous contexts without the need for a specific definition. See *Pavatt v. Carpenter,* 928 F.3d 906, 932 (10th 2019) ("material change in the law"); *Alaimalo v. United States*, 645 F.3d 1042, 1047-48 (9th Cir. 2011) (same); *Harrison v. Ollison*, 519 F.3d 952, 960 (9th Cir. 2008) (same); *United States v. Symington*, 195 F.3d 1080, 1090 (9th Cir. 1999) (using "material change in financial condition" without definition). The concept of a material change is well established, easily understood, and not vague.

### B.    S.B. 2420 Is Not a Prior Restraint.

Plaintiffs wrongly claim that H.B. 2420 acts as a prior restraint. "The term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993). Court actions, like temporary restraining orders or permanent injunctions, are key examples of prior restraints, as such "court orders . . . actually forbid speech activities." *Id.* Plaintiffs cite to *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) to justify their claim of prior restraint. But this is entirely inapposite. In *Bantam*, a Rhode Island Commission sent

notices to publishers to stop the circulation of certain publications, and followed these notices up with threats of criminal proceedings and police visits. *Id.* at 68. This demonstrates the entirely different character of the case compared to S.B. 2420. Texas is not banning the circulation of any apps, nor even portions of the speech therein, through the mechanisms of S.B. 2420.

S.B. 2420 does not act as a prior restraint which serves to ultimately forbid speech. The apps right to speak and publish their speech through the app stores is not hindered by S.B. 2420. Adult listeners may access that speech unrestrained by S.B. 2420. And so, too, may minors, once they have obtained parental—not court—permission.

### C.     S.B. 2420 Does Not Facially Violate the First Amendment

Bringing a facial challenge against a state law "comes at a cost." *Moody v. Netchoice, LLC* (*Netchoice II*), 144 S. Ct. 2383, 2397 (2024)(*Netchoice II*), 144 S. Ct. 2383, 2397 (2024). "Facial challenges are disfavored" because they "rest on speculation . . . short circuit the democratic process . . . and sit uncomfortably with Article III." *NetChoice, L.L.C. v. Paxton*, 121 F.4th 494, 497 (5th Cir. 2024) (quoting *Netchoice II*, 144 S. Ct. at 2409; citing *Netchoice II*, 144 S. Ct. at 2413 (Thomas, J., concurring in the judgment)). "Because of the significant risks associated with facial challenges—even those under the First Amendment—challengers bear a heavy burden." *Id.* To carry that burden, Plaintiffs must engage in a two-step process: first, "determine every hypothetical application" of S.B. 2420, and second, determine which of S.B. 2420's "applications violate the First Amendment, and [] measure them against the rest." *Id.* at 498. Only if S.B. 2420's "unconstitutional applications substantially outweigh its constitutional ones" can it be found facially invalid. *Id.* (quoting *Netchoice II*, 144 S. Ct. at 2397).

Essentially, a facial challenge fails unless "no set of circumstances exists under which the

Act would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745 (1987). This is an "extraordinarily high" standard, *NetChoice v. Paxton*, 49 F.4th 439, 449 (5th Cir. 2022), and courts "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

Under Supreme Court precedents, a statute is facially invalid under the First Amendment only if its "unconstitutional applications" are "substantially disproportionate to the statute's lawful sweep." *E.g.*, *United States v. Hansen*, 599 U. S. 762, 770 (2023). Here, Plaintiffs have not even attempted to show such an impact.

Plaintiffs assert that every application of the Act fails, because of the age-verification provision. ECF No. 5 at 18-19. They cite *Free Speech Coal.*, 606 U.S. at 495, for the proposition that there is a generalized "right to access speech." *Free Speech Coal.* however states "no person— adult or child—has a First Amendment right to access speech that is obscene to minors without first submitting proof of age." *Id.* at 478. Plaintiffs make no effort to disentangle the applications of the Act that apply to material obscene to minors from that which is non-obscene. Defendant however demonstrates a great number of applications where S.B. 2420 is constitutional. *See supra* at I.A-B, and *infra* at I.D. Plaintiffs have therefore failed to carry their burden under *Moody*.

### D.     S.B. 2420's Age Rating Requirements Do Not Violate the First Amendment.

Texas is not alone in its use of state power require warnings or disclosures about potentially dangerous products. Consider the state of California's ubiquitous warnings added by Proposition 65, which require businesses to label all products with warnings about chemicals known to the state of California to cause cancer or reproductive toxicity. Cal. Health & Safety Code, § 25249.6. Likewise, Texas, through S.B. 2420, seeks to enable parents to protect their children from Apps

that the parents might find to be harmful to their children, by requiring app stores to provide standardized categorical age ratings of the various apps found therein. S.B. 2420's age rating display requirement is not, properly understood, a content-based burden in any way, because S.B. 2420's requirement applies to all apps regardless of their content.

## II.    THE REMAINING FACTORS DO NOT FAVOR A PRELIMINARY INJUNCTION.

### A.  Plaintiffs Cannot Show Irreparable Injury.

The projected harms caused to plaintiffs by the enactment of S.B. 2420 are vastly overstated. The Apple and Google app stores already issue age ratings of the various apps they carry. They already display those issued ratings. The App stores verify the ages of their users, and provide tools which enable parents to limit what apps children are able to download or make purchases in. And Plaintiffs acknowledge as much. As such, very little burden is placed on plaintiffs to meet the requirements for app stores under S.B. 2420.

### B.    The Balance of the Equities and the Public Interest also favor the enforcement of S.B. 2024.

As noted above, Texas has approved a new amendment to its constitution "enshrining" the long understood right and responsibility of a parent "to nurture and protect the parent's child," including the right to "make decisions regarding the child's upbringing." S.J. Res. 34, 89th Leg., Reg Sess. (Tex. 2025). S.B. 2420 ensures that parents are put in a position to make those decisions regarding their children's use of applications on mobile devices. Far from taking away parental decision making, S.B. 2420 maximizes it by requiring app stores to provide parents with information about apps that children may wish to download, and requiring those app stores to give

parents the ability to say "yes" or "no" with consistent standards across app stores to enable parents to do so such that they are fully informed in their decisions.

Given that the people of Texas overwhelmingly voted to enshrine parental rights even more firmly in the Texas Constitution just earlier this week, it is plain that the public has an interest in ensuring that the app stores will enable Texas parents to consistently make informed decisions about the mobile device use of their children.

## III.    THE AGE VERIFICATION, PARENTAL VERIFICATION, PARENTAL CONSENT, AND AGE RATING PROVISIONS ARE SEVERABLE FROM ONE ANOTHER AND FROM S.B. 2420 AS A WHOLE.

Should the court find any portion of S.B. 2420 to be unconstitutional, the bill contains an express severance clause.[21] When the Legislature includes an express severability clause in the relevant statute, the inquiry is straightforward. Absent extraordinary circumstances, the Court should adhere to the text of the severability clause. *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 624 (2020). That is because a severability clause leaves no doubt about what the enacting Congress wanted if one provision of the law were later declared unconstitutional. *Id.* A severability clause indicates "that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *Id.* (quoting *Alaska Airlines, Inc. v. Brock*, 480 U. S. 678, 686 (1987)).

The courts presume that an unconstitutional provision in a law is severable from the

---

[21] "It is the intent of the legislature that every provision, section, subsection, sentence, clause, phrase, or word in this Act, and every application of the provisions in this Act to every person, group of persons, or circumstances, is severable from each other. If any application of any provision in this Act to any person, group of persons, or circumstances is found by a court to be invalid for any reason, the remaining applications of that provision to all other persons and circumstances shall be severed and may not be affected." Tex. Bus. & Comm. Code § 121.101(2).

remainder of the law or statute, creating a "strong presumption" in favor of severability. *Id*. "Generally speaking, when confronting a constitutional flaw in a statute, we [the Supreme Court] try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enterprise Fund v. Public Company Accounting Oversight Bd*., 561 U. S. 477, 508 (2010) (internal quotation marks omitted, material in brackets added); *see also Regan v. Time, Inc*., 468 U. S. 641, 652–653 (1984) (plurality).

Defendant incorporates its arguments regarding age verification, parental verification, parental consent, and age ratings that show the attacked measures are constitutional. Each of those items, even if modified by the Court or eliminated from the Act, would not doom the entire law. For example, as referenced above, Texas S.B. 2420 defines four age categories for app store users. *See* Tex. Bus. & Comm. Code § 121.021(b). The most legally significant of those categories is the "18 or older" age rating under the Act, which separates minors from adults. While the other categories are created, the information that is supplied to a supervising adult for any minor's account includes not just the age category from the developer, but also "the specific content or other elements" that led to the rating assigned by it. *Id*. at § 121.021(f)(1)(C). The various ratings within the category of "minor" may be a useful shorthand to help inform the supervising adult, but it is the underlying criteria (language, violence, sexual content) relayed to the adult that allows parent to make a decision regarding consent. The Act could survive if the age ratings were severed.

## Conclusion

Defendant respectfully requests that this Court deny Plaintiffs' request for a preliminary injunction.

Date: November 7, 2025

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division

Texas Bar No. 24060998

Respectfully submitted.

/s/ Zachary W. Berg
**ZACHARY W. BERG**
Special Counsel
Texas Bar No. 24107706

**STEVEN B. LOOMIS**
Special Counsel
Texas Bar No. 00793177

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
zachary.berg@oag.texas.gov
steven.loomis@oag.texas.gov

***Counsel for Defendant Paxton***

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on November 7, 2025 and that all counsel of record were served by CM/ECF.

/s/ Zachary W. Berg
ZACHARY W. BERG

28