IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| STUDENTS ENGAGED IN ADVANCING TEXAS; M.F., *by and through next friend* VANESSA FERNANDEZ; *and* Z.B., *by and through next friend* S.B., <br><br>         *Plaintiffs*, <br><br> v. <br><br> KEN PAXTON, *in his official capacity as the Texas Attorney General*, <br><br>         *Defendant*. | Civil Action No. 1:25-cv-1662 |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

                                                          **Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

      I.      Plaintiffs Are Likely To Prevail On The Merits. ................................................................ 1

            A.      The challenged provisions restrict access to fully protected speech. .......... 1

            B.      The State has not carried its First Amendment burden. ............................. 3

                  1.      Strict scrutiny applies to the challenged provisions. ....................... 3

                  2.      The State's arguments for lesser scrutiny misunderstand the law. . 4

                  3.      The challenged provisions fail strict or intermediate scrutiny. ....... 6

                  4.      The challenged provisions are facially invalid. .............................. 8

            C.      The Act's "material change" provision is unconstitutionally vague. ......... 9

      II.     The Remaining Factors Favor A Preliminary Injunction. .................................... 10

      III.    The Challenged Provisions Are Not Severable From One Another. .................... 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*303 Creative LLC v. Elenis*,
   600 U.S. 570 (2023) ............................................................................................................. 5

*Alexander v. United States*,
   509 U.S. 544 (1993) ............................................................................................................. 3

*Am. Acad. of Implant Dentistry v. Parker*,
   860 F.3d 300 (5th Cir. 2017) ............................................................................................... 7

*Ashcroft v. ACLU*,
   542 U.S. 656 (2004) ............................................................................................................. 4

*Ashcroft v. Free Speech Coal., Inc.*,
   535 U.S. 234 (2002) ..................................................................................................... 1, 5, 9

*Baggett v. Bullitt*,
   377 U.S. 360 (1964) ............................................................................................................. 9

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) ............................................................................................................... 3

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) ............................................................................................................... 5

*Boos v. Barry*,
   485 U.S. 312 (1988) ............................................................................................................. 4

*Brown v. Ent. Merchs. Ass'n*,
   564 U.S. 786 (2011) ..................................................................................................... passim

*CCIA v. Paxton*,
   747 F. Supp. 3d 1011 (W.D. Tex. 2024) .......................................................................... 4, 8

*Chiu v. Plano Indep. Sch. Dist.*,
   339 F.3d 273 (5th Cir. 2003) ............................................................................................... 4

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ......................................................................................................... 2, 3

*City of Houston v. Hill*,
   482 U.S. 451 (1987) ............................................................................................................. 9

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Corley v. United States*,
  556 U.S. 303 (2009) ............................................................................................................10

*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................................................................10

*Express Oil Change, LLC v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*,
  916 F.3d 483 (5th Cir. 2019) ................................................................................................7

*FEC v. Cruz*,
  596 U.S. 289 (2022) ..............................................................................................................6

*Free Speech Coal., Inc. v. Paxton*,
  606 U.S. 461 (2025) ..................................................................................................... passim

*HM Fla.-ORL, LLC v. Gov. of Fla.*,
  137 F.4th 1207 (11th Cir. 2025) ...........................................................................................9

*Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*,
  460 U.S. 575 (1983) ..............................................................................................................3

*Moody v. NetChoice, LLC*,
  603 U.S. 707 (2024) ..............................................................................................................8

*NetChoice, LLC v. Reyes*,
  748 F. Supp. 3d 1105 (D. Utah 2024) ...................................................................................7

*NetChoice, LLC v. Yost*,
  778 F. Supp. 3d 923 (S.D. Ohio 2025) .................................................................................2

*Novak v. City of Parma*,
  932 F.3d 421 (6th Cir. 2019) ................................................................................................3

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ..............................................................................................................4

*Rubin v. Coors Brewing Co.*,
  514 U.S. 476 (1995) ..............................................................................................................7

*SEAT v Paxton*,
  765 F. Supp. 3d 575 (W.D. Tex. 2025) ...................................................................3, 4, 8, 9

*Smith v. California*,
  361 U.S. 147 (1959) ..............................................................................................................5

## TABLE OF AUTHORITIES (continued)

Page(s)

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) .................................................................................................... *passim*

*Spirit Aerosystems, Inc. v. Paxton*,
   142 F.4th 278 (5th Cir. 2025) ............................................................................................. 9

*Stahl v. City of St. Louis*,
   687 F.3d 1038 (8th Cir. 2012) ............................................................................................ 9

*Tex. VFW of U.S. v. Tex. Lottery Comm'n*,
   760 F.3d 427 (5th Cir. 2014) .............................................................................................. 7

*Texas v. Johnson*,
   491 U.S. 397 (1989) ............................................................................................................ 6

*Turner Broad. Sys., Inc. v. FCC*,
   512 U.S. 622 (1994) ............................................................................................................ 6

*United States v. Lauderdale Cnty., Miss.*,
   914 F.3d 960 (5th Cir. 2019) ............................................................................................ 10

*United States v. Playboy Ent. Grp., Inc.*,
   529 U.S. 803 (2000) .................................................................................................. 3, 6, 7

*United States v. Stevens*,
   559 U.S. 460 (2010) ............................................................................................................ 6

*Vance v. Universal Amusement Co., Inc.*,
   445 U.S. 308 (1980) ............................................................................................................ 4

*Villas v. City of Farmers Branch*,
   726 F.3d 524 (5th Cir. 2013) ............................................................................................ 10

**State Cases**

*Builder Recovery Servs., LLC v. Town of Westlake*,
   650 S.W.3d 499 (Tex. 2022) ............................................................................................ 10

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................... *passim*

## TABLE OF AUTHORITIES (continued)

**Page(s)**

**Statutes**

Texas Business & Commerce Code

 § 121.021................................................................................................................3

 § 121.022.................................................................................................2, 3, 4, 10

 § 121.026................................................................................................................8

 § 121.052........................................................................................................3, 10

Texas Civil Practice & Remedies Code

 § 129B.002.............................................................................................................7

**INTRODUCTION**

The State admits the Act is designed to "protect[] children from objectionable" and "unsuitable material," and sweeps so broadly that it restricts access to "First Amendment protected speech." Opp. 13, 19, 21. The State offers no evidence or meaningful argument to justify this censorship, instead suggesting the challenged provisions are permissible because they somehow empower families. *Id.* at 25-26. They do not—and in any event, the Supreme Court rejected this argument in *Brown v. Entertainment Merchants Association*, holding that a state cannot condition access to protected speech upon parental consent, even in "purported aid to parental authority." 564 U.S. 786, 795 & 795 n.3, 803-04 (2011). The State's focus on *Free Speech Coalition, Inc. v. Paxton* is puzzling, as that case confirms that strict scrutiny applies to laws (like the Act) burdening access to "fully protected" speech. 606 U.S. 461, 482-85, 490-92 & 493 n.12 (2025). The State does not attempt to—and cannot—satisfy that standard, or even intermediate scrutiny.

Facial relief is warranted. The only hypothetically valid application the State identifies is to prevent the incidental dissemination of unprotected speech like obscenity—implicitly acknowledging that the Act is overbroad and "turns the First Amendment upside down." *Ashcroft v. Free Speech Coal., Inc.*, 535 U.S. 234, 255 (2002). The vast majority of the challenged provisions' applications will restrict protected speech without justification.

**ARGUMENT**

**I.  Plaintiffs Are Likely To Prevail On The Merits.**

    **A.  The challenged provisions restrict access to fully protected speech.**

The State does not deny that screening minors like Plaintiffs from online content "necessarily" burdens all Texans' "First Amendment right to access speech." *Free Speech Coal.*, 606 U.S. at 495. And it concedes that the challenged regime restricts all users—and presumptively bans minors—from accessing "First Amendment protected speech." Opp. 13. There is thus no

1

serious dispute that the age-verification, parent-identification, and parental-consent mandates trigger First Amendment scrutiny.

The State's passing assertion that the Act "regulates conduct, not content" because it "applies to all contracts minors may wish to enter," Opp. 8-9, is wrong. "[P]rohibiting minors from contracting to access [a] plethora of protected speech cannot be reduced to a regulation of commercial conduct." *NetChoice, LLC v. Yost*, 778 F. Supp. 3d 923, 950 (S.D. Ohio 2025). *Brown* rejected a similar gambit, holding that restricting "the sale or rental" of content restricts speech, 564 U.S. at 792 n.1, despite California's claim that its law "cover[ed] only commercial transactions entered into by minors outside the presence of parents," Pet.'s Reply Br., *Brown v. Ent. Merchs. Ass'n*, 2010 WL 4034925, at *3-4, *11-18 (U.S. filed Oct. 8, 2010).

Nor does the Act escape scrutiny on grounds that parents may override its ban. Opp. 15-16, 19. "[T]he same rigorous scrutiny" applies to laws "burdening and laws banning speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565-66 (2011) (citation omitted). Requiring Plaintiffs to provide age-identification and parental-authority documentation *before* accessing fully protected speech is a constitutionally significant burden, *Free Speech Coal.*, 606 U.S. at 495 (at least intermediate scrutiny applies), as is requiring parental consent for minors, *Brown*, 564 U.S. at 792 n.1 & 795 n.3. Conditioning minors' access to protected speech upon parental consent always triggers First Amendment review. *See Yost*, 778 F. Supp. 3d at 932 & 932 n.1 (collecting cases).

Finally, it makes no difference that the parent-identification ("account linking") mandate, Tex. Bus. & Com. Code § 121.022(b), may not *in isolation* restrict access to speech. Opp. 18-19. Courts do not decide whether a component of a regulatory regime "could survive constitutional scrutiny if it existed separately." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993). If a component "functions, with the rest of the enactments in question, to

suppress" protected speech, it is subject to scrutiny. *Id*. That is the case here.

### B.     The State has not carried its First Amendment burden.

It is the government's burden to prove that a law restricting speech is constitutional. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000). The State does not even try to do so.

#### 1.     Strict scrutiny applies to the challenged provisions.

Strict scrutiny applies to the law because it is a prior restraint, has a content-based justification, and uses a content-based coverage definition. Mot. 8-11. The State's rejoinders fail.

***Prior restraint.*** The State does not dispute (Opp. 22-23) that the challenged provisions require app stores and developers to classify protected speech into suitable "age categories," Tex. Bus. & Com. Code § 121.052, and restrict how that content is disseminated. *See* Mot. 9 (citing cases); *see also SEAT v Paxton*, 765 F. Supp. 3d 575, 596-97, 598 (W.D. Tex. 2025) (Pitman, J.) (similar requirements were "akin to prior restraints"). Nor does the State deny that §§ 121.021-22 require users to provide age-identification and parental-authority documentation "as a condition of engaging in protected activity," thus preventing access to fully protected speech. *Minneapolis Star & Trib. Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 586 n.9 (1983) (such conditions are "form[s] of prior restraint") (Mot. 9). And the State admits the Act requires minors to obtain "permission" (Opp. 23) before accessing fully protected speech—the exact "parental veto" subjected to strict scrutiny in *Brown*, 564 U.S. at 795 n.3 (Mot. 10).

The State argues prior restraints are limited to "'administrative and judicial orders'" that "'forbid speech.'" Opp. 22-23 (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). But *Alexander* held that a prior restraint is *any* state action that creates "legal impediment[s]" to speech, and merely described prohibitory orders as "classic examples." 509 U.S. at 550-51. Prior restraints are not confined to these simpler forms. *See Novak v. City of Parma*, 932 F.3d 421, 433 (6th Cir. 2019) (discussing *Alexander*); *e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (threat

3

of liability is a prior restraint when used to cause intermediaries to block speech). In *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 311 (1980) (Mot. 9), for example, the Court rejected as a prior restraint a statute permitting judges to block the showing of films without a determination that the films were unprotected. The Act's forms of mandatory "pre-clearance" do the same. *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 277, 283 (5th Cir. 2003) (Mot. 10).

***Content-based justification.*** The State admits strict scrutiny applies to laws justified by "the direct impact that speech has on its listeners," *Boos v. Barry*, 485 U.S. 312, 321 (1988) (Mot. 10), and concedes the Act was passed for that very reason: to shield minors from protected but supposedly "unsuitable," "objectionable," or potentially "harmful" information. Opp. 19, 20, 21, 24-25. Strict scrutiny applies. *Ashcroft v. ACLU*, 542 U.S. 656, 670 (2004) (Mot. 11).

***Content-based coverage definition.*** The State fails to address the Act's arbitrary, content-based exemption for apps operated by nonprofits that provide "direct access to emergency services," "standardized test[s]," or support applications for "admission to" or placement "in a postsecondary educational institution," Tex. Bus. & Com. Code § 121.022(h), which means the challenged provisions' application "depend[s] entirely on the communicative content" a service provides. *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015); *see* Mot. 11-12. Strict scrutiny applies for this reason as well. *See, e.g.*, *SEAT*, 765 F. Supp. 3d at 592-95; *CCIA v. Paxton*, 747 F. Supp. 3d 1011, 1032 (W.D. Tex. 2024) (Pitman, J.) (Mot. 11).

### 2. The State's arguments for lesser scrutiny misunderstand the law.

The Opposition makes numerous pleas for lesser scrutiny. None has merit.

*First*, the State suggests (Opp. 17) rational basis review applies because the Act—by restricting access to almost all apps and paid app content—inevitably will sometimes restrict unprotected speech like obscenity. But rational basis review applies only to regulations that *exclusively* restrict unprotected speech—not those that do so incidentally. *See Free Speech Coal.*,

4

606 U.S. at 471-72, 495 (rational basis inapplicable to restriction on content protected as to adults). If the State were right, it could censor entire fora with virtually no scrutiny because *some* captured expression is unprotected. That is not the law. *See Ashcroft*, 535 U.S. at 255 (First Amendment forbids "banning unprotected speech" by broadly banning protected speech "in the process").

*Second*, the State claims (Opp. 18) that, if any First Amendment scrutiny applies, it is only intermediate scrutiny because the burdens of age-verification, parent-identification, and parental-consent are "'incidental to the statute's regulation of activity that is not protected by the First Amendment.'" *Free Speech Coal.*, 606 U.S. at 483. But intermediate scrutiny applied in *Free Speech Coalition* because minors had *no right* to access the adult content targeted by that law, and the burdens on *adults* were incidental to preventing *minors'* unprotected activity. *Id*. In contrast, the Act targets and restricts access to materials—like those within Coursera, ESPN, Kindle, the New York Times, and Spotify apps—that are "fully protected" for both minors and adults. *Id.* at 482-85, 490-92 & n.12. Strict, not intermediate scrutiny, "is the standard for reviewing the direct targeting of fully protected speech." *Id.* at 484.

*Third*, the State argues (Opp. 17-18) that the Act at most regulates commercial speech that is subject to intermediate scrutiny because app stores "are commercial enterprises." But the commercial-speech doctrine is limited to advertising and other offers to transact, *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983), not the sale and "dissemination of books and other forms of the printed word." *Smith v. California*, 361 U.S. 147, 150 (1959). The State's argument would strip First Amendment protections from all newspapers and bookstores that operate for profit, *303 Creative LLC v. Elenis*, 600 U.S. 570, 594, 600 (2023), and dilute Plaintiffs' rights to access expressive works simply because they are sold. *See Brown*, 564 U.S. at 792 n.1 (purchasing video games is non-commercial speech).

### 3. The challenged provisions fail strict or intermediate scrutiny.

Texas makes no attempt to show that the challenged provisions satisfy the First Amendment, conclusorily asserting that "the strength of Texas' interest and the lack of any real burdens on speech would allow Texas to pass a strict scrutiny analysis." Opp. 18, 20. The Supreme Court "emphatically rejected" this exact "balancing test" in *Brown*, 564 U.S. at 792-93, and *United States v. Stevens*, 559 U.S. 460, 470 (2010). Instead, Texas must prove the challenged mandates are necessary and provide the least restrictive means to achieve a compelling interest, *Playboy*, 529 U.S. at 813, 817 (Mot. 12-15) (strict scrutiny), or at minimum are narrowly tailored to directly advance a real interest "unrelated to the suppression" of speech, *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662-64 (1994) (Mot. 15-17) (intermediate scrutiny). Texas cannot carry its burden.

***No evidence the regulations achieve a compelling government interest.*** The State does not show how *any* of the challenged regulations achieves—or under intermediate scrutiny "in fact" advances in a "direct and material way," *Turner*, 512 U.S. at 662-64—the solution to a real problem unrelated to suppressing speech. *Brown*, 564 U.S. at 799 ("direct causal link" required). No evidence shows that unmitigated access to protected content harms minors, much less that age-screening and default-banning teens from most—but not all—non-native apps addresses that problem. The State's "mere conjecture" (Opp. 17) is not enough. *FEC v. Cruz*, 596 U.S. 289, 307 (2022) (citation omitted); *see Texas v. Johnson*, 491 U.S. 397, 408-09 (1989) ("presumption" that restricting speech would prevent harm failed intermediate scrutiny). The State never addresses Plaintiffs' evidence showing "no consistent or measurable associations" between minors' wellbeing and access to app-based media, Sieff Decl. Ex. 26 at 29-30, and "no evidence establishing a cause-and-effect relationship," *id.* Ex. 30 ¶¶ 10-32, 34-40; *id.* Exs. 27-29, 31. In fact, unrebutted evidence shows restricting teens' access to app-store content will, for many, do more harm than good. *See* M.F. Decl. ¶ 18; Z.B. Decl. ¶¶ 5, 7-8, 18-19; Sieff Decl. Ex. 30 ¶¶ 39-44.

6

Nor does the State show how the challenged provisions "in fact alleviate" these hypothetical harms "to a material degree." *Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300, 309 (5th Cir. 2017) (intermediate scrutiny) (citation omitted) (Mot. 16-17); *see Brown*, 564 U.S. at 799 (regulation must be "necessary to the solution" under strict scrutiny). A Utah federal court recently enjoined an analogous parental-consent regime where the government similarly failed to "offer any evidence that these specific measures will alter the status quo to such an extent that mental health outcomes will improve[.]" *NetChoice, LLC v. Reyes*, 748 F. Supp. 3d 1105, 1128 (D. Utah 2024). And the State never responds to its underinclusivity problem—that the Act's irrational exclusions "leave significant influences bearing on [its] interest unregulated," *Tex. VFW of U.S. v. Tex. Lottery Comm'n*, 760 F.3d 427, 440 (5th Cir. 2014) (Mot. 15)—which is "enough to defeat it." *Brown*, 564 U.S. at 802; *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489 (1995) (Mot. 16-17).

*No evidence of narrow tailoring.* The State also never attempts to show how the challenged provisions are the "least restrictive" method to eliminate even the hypothetical harms asserted. *Playboy*, 529 U.S. at 827. In fact, the State repeatedly admits that "existing tools"—including voluntary "age limits," "age ratings," and "parental approval" features—"already" empower parents to screen unwanted materials. Opp. 8, 12, 16, 18-19, 25. The availability of these alternatives is dispositive. *See* Mot. 14 (citing cases); *see also Express Oil Change, LLC v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 493 (5th Cir. 2019) (Mot. 17) (same under intermediate scrutiny). Beyond that, the State acknowledges (Opp. 20) that existing Texas law bans minors from accessing obscene and adult content, Tex. Civ. Prac. & Rem. Code § 129B.002(a), so the only functional applications of the challenged provisions are to restrict "fully protected" app store content. *Free Speech Coal.*, 606 U.S. at 482-87, 490-93 & 493 n.12; *see Brown*, 564 U.S. at 794-95. And the State has no response to Plaintiffs' point that the Act is far

7

*more* overinclusive than the laws enjoined in *SEAT* and *CCIA* since it restricts access to virtually *all* app store content, not just large social media apps. *See* Mot. 14.

The State argues (Opp. 25-26) that the challenged provisions aid parents. But *Brown*, 564 U.S. at 802, rejected that contention regarding another parental-consent regime. Mot. 14-15. It makes even less sense here, where the Act not only overrides parents by making the State's choices the default, *Brown*, 564 U.S. at 802, but forbids willing parents from providing "blanket consent." Tex. Bus. & Com. Code § 121.026(a)(3); *see* Fernandez Decl. ¶¶ 5, 7-10.

### 4.  The challenged provisions are facially invalid.

The State agrees that facial relief is the appropriate remedy for speech regulations with substantially more unconstitutional applications than constitutional ones, and that the Court should assess this by (1) determining whether the challenged law regulates speech in some, most, or all applications, and (2) deciding whether the applications to *protected* speech that violate the First Amendment are more substantial than all other applications. *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (Mot. 18-19, Opp. 23). Applying this test, facial relief is warranted. Mot. 19.

The State's claim that Plaintiffs "have not even attempted" to meet this standard (Opp. 24) is wrong. At Step 1, Plaintiffs showed—and the State effectively concedes, Opp. 13, 19, 21—that *every* application of the challenged provisions burdens Texans' "right to access speech" by placing apps and paid app content behind an age-gate. *Free Speech Coal.*, 606 U.S. at 495 (Mot. 18-19). At Step 2, Plaintiffs demonstrated—and the State confirms—that the challenged provisions' dragnet only has constitutional applications to unprotected speech (like obscenity) incidentally swept in. Opp. 17, 24. App stores provide access to vast amounts of protected speech, and "only a small portion" of that content "falls outside First Amendment coverage," *SEAT*, 765 F. Supp. 3d at 597 & 597 n.13 (Mot. 19). A substantial share of applications thus burden protected speech. Since the State cannot justify those applications, *supra* § I.B.3, and since the permissible

8

happenstance applications to unprotected speech are few, the law is overbroad. This is especially so given that Texas *already* restricts minors from unprotected online content. *See Spirit Aerosystems, Inc. v. Paxton*, 142 F.4th 278, 286-87 (5th Cir. 2025) (Mot. 19).

The State argues that Plaintiffs "make no effort to disentangle" the challenged provisions' applications to obscenity as to minors "from that which is non-obscene." Opp. 24. But because "no one can have perfect knowledge" of a law's every application, it is enough that the speech burdened by the Act "easily comprises a substantial amount" of protected speech. *HM Fla.-ORL, LLC v. Gov. of Fla.*, 137 F.4th 1207, 1243 (11th Cir. 2025) (law overbroad based on "gap" between what minors may view and what law "likely" restricted). Laws that restrict protected speech to restrict incidents of unprotected speech are overbroad. *Ashcroft*, 535 U.S. at 255 (Mot. 19-20).

### C. The Act's "material change" provision is unconstitutionally vague.

Sections 121.022(g) and 121.053(b)(4) require app stores to override parental consent whenever an app "materially changes" its "functionality" or "user experience." Texas concedes the Act never defines these terms. Opp. 21. And it does not meaningfully dispute that this leaves app stores to guess what changes will matter, which will cause app stores to broadly revoke access to avoid liability. *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964) (Mot. 17-18); CCIA Mot. 40-41.

Interpreting the provision "in light of the [Act's] goals" (Opp. 21) does not help. That goal—to shield "minors from unsuitable material," *id.*—introduces *more* ambiguity. What is "unsuitable," and to which minors? Is it material a given parent would block? *Cf. Stahl v. City of St. Louis*, 687 F.3d 1038, 1041 (8th Cir. 2012) (law vague when avoiding liability required predicting reactions to speech) (Mot. 18). Material that a given regulator deems inappropriate? *Cf. City of Houston v. Hill*, 482 U.S. 451, 465 n.15 (1987) (law vague where regulators had discretion to impose liability). No one knows—and that is the problem. *See SEAT*, 765 F. Supp. 3d at 602.

Invoking neighboring provisions (Opp. 21) is also no solution. Section 121.053(a)

9

mentions changes to an app's "terms of service or privacy policy," and § 121.053(b)(1)-(3) lists changes to "data," "content," "advertisements," "monetization," or "purchase[s]." But these are "independent clauses separated by a disjunctive 'or'" from § 121.053(b)(4), and thus cannot give meaning to that independent clause. *United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 966-67 (5th Cir. 2019). Rather, to ensure § 121.053(b)(4) is not redundant, a "material" change must mean something *other* than what these provisions describe. *See Corley v. United States*, 556 U.S. 303, 314 (2009). The question is *what*, and the law does not say.

## II.   The Remaining Factors Favor A Preliminary Injunction.

Texas claims there is no irreparable harm because app stores can easily "meet the [Act's] requirements," Opp. 25, ignoring that enlisting app stores to violate *Plaintiffs'* First Amendment rights is irreparable. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Its argument that equity supports empowering parents (Opp. 25-26) likewise ignores facts (Fernandez Decl. ¶¶ 5, 7-10) and law showing that the Act's parental consent regime *undermines* that interest. *Brown*, 564 U.S. at 795.

## III.   The Challenged Provisions Are Not Severable From One Another.

A Texas regulation cannot be severed if "all the provisions are connected in subject-matter, dependent on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed the legislature would have passed the one without the other." *Builder Recovery Servs., LLC v. Town of Westlake*, 650 S.W.3d 499, 507 (Tex. 2022) (cleaned up); *Villas v. City of Farmers Branch*, 726 F.3d 524, 537 (5th Cir. 2013) (state law applies). Here, there can be no parental consent without age verification and parental identification. And while Plaintiffs do not challenge § 121.052, *cf.* Opp. 27, the challenged mandates depend on—and cannot be severed from—that provision. *See* Tex. Bus. & Com. Code § 121.022(f)(1)(B).

## CONCLUSION

The Court should preliminarily enjoin the challenged provisions.

Respectfully submitted,

                                                                                                                                           */s/    Adam S. Sieff*
                                                                                                                                               Adam S. Sieff

| | |
|---|---|
| Adam S. Sieff* | Ambika Kumar* |
| Haley B. Zoffer* | Erwin Reschke (TX Bar #24110264) |
| DAVIS WRIGHT TREMAINE LLP | DAVIS WRIGHT TREMAINE LLP |
| 350 South Grand Avenue, 27th Floor | 920 Fifth Avenue, Suite 3300 |
| Los Angeles, California 90071 | Seattle, Washington 98104 |
| Telephone: (213) 633-6800 | Telephone: (206) 622-3150 |
| adamsieff@dwt.com | Facsimile: (206) 757-7312 |
| haleyzoffer@dwt.com | ambikakumar@dwt.com |
| | erwinreschke@dwt.com |
| Abigail B. Everdell* | |
| DAVIS WRIGHT TREMAINE LLP | David M. Gossett* |
| 1251 Avenue of the Americas, 21st Floor | Celyra Myers* |
| New York, New York 10020 | DAVIS WRIGHT TREMAINE LLP |
| Telephone: (212) 603-6488 | 1301 K Street NW, Suite 500 East |
| abigaileverdell@dwt.com | Washington, DC 20005 |
| | Telephone: (202) 973-4200 |
| | davidgossett@dwt.com |
| | celyramyers@dwt.com |

*Attorneys for Plaintiffs*

                                                                                                                                                    *admitted pro hac vice

November 20, 2025

## CERTIFICATE OF SERVICE

I certify that on November 20, 2025, the foregoing was filed electronically with the Court's CM/ECF system and served upon all counsel of record.

>                /s/    *Adam S. Sieff*
>                       Adam S. Sieff