UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS ENGAGED IN ADVANCING TEXAS, et al., | § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | 1:25-CV-1662-RP |
| KEN PAXTON, *in his official capacity as the Texas Attorney General*, | | |
| Defendant. | | |

# ORDER

Before the Court is Plaintiffs Students Engaged in Advancing Texas ("SEAT"); M.F. by and through next friend, Vanessa Fernandez; and Z.B., by and through next friend, S.B.'s (collectively "Plaintiffs") Motion for Preliminary Injunction, (Dkt. 5). Defendant Ken Paxton, ("Paxton"), in his official capacity as the Texas Attorney General, filed a response, (Dkt. 28), to which Plaintiffs replied, (Dkt. 31). The Court held a hearing on December 16, 2025, which was consolidated with another case before this Court challenging the same law, *Computer & Communications Industry Association v. Paxton*, 1:25-cv-1660-RP (W. D. Tex.), by consent of all parties. (Dkt. 37). Having considered the briefing, the evidence, and the relevant law, the Court will grant the motion.

## I. INTRODUCTION

These cases concern the Texas App Store Accountability Act, Senate Bill 2420 ("SB 2420" or "the Act"), Tex. Bus. & Com. Code § 121.001 et seq., which is scheduled to take effect on January 1, 2026. SB 2420 imposes age verification, parental verification, parental consent, and compelled speech on app stores and app developers. It restricts access to a vast universe of speech by requiring Texans to prove their age before downloading a mobile app or accessing paid content within those

apps and requires minors to obtain parental consent. The Act is akin to a law that would require every bookstore to verify the age of every customer at the door and, for minors, require parental consent before the child or teen could enter and again when they try to purchase a book. As set out below, the Court finds a likelihood that, when considered on the merits, SB 2420 violates the First Amendment.

While this Court finds that SB 2420 is likely unconstitutional, the Court recognizes the importance of ongoing efforts to better safeguard children when they are on their devices. Many parents, educators, researchers, and mental health professionals have raised the alarm that children are spending too much time on their phones, scrolling social media, or playing games that are often designed to encourage prolonged use, instead of interacting in real life, playing with siblings and friends, getting outside, working on schoolwork, or experiencing boredom.[1] These consequences are substantial, and the Court recognizes the broad support for protecting children when they use apps. But the means to achieve that end must be consistent with the First Amendment. However compelling the policy concerns, and however widespread the agreement that the issue must be addressed, the Court remains bound by the rule of law.

## II. BACKGROUND

Texas already regulates children's access to content that lacks First Amendment protection. Since November 2023, House Bill 1181 has required commercial entities that "knowingly and intentionally publish[] or distribute[] material on an Internet website . . . more than one-third of which is sexual material harmful to minors" to "use reasonable age verification methods . . . to verify

---

[1] Though not made part of the record in this case, arguments about the negative health impacts of social media on youth were made in amicus briefs in a related case before this Court, *Computer & Communications Industry Association v. Paxton*, 1:25-cv-1660-RP (W.D. Tex.) (Amicus Brief by the Digital Child Institute, Dkt. 45, at 13; Amicus Brief by Bipartisan Technology Scholars, Dkt 57, at 9−17). When the Court asked for record evidence in support of these arguments at the hearing, Paxton pointed the Court to the amicus briefs (not to evidence Paxton produced on the record).

that an individual attempting to access the material is 18 years of age or older." Tex. Civ. Prac. & Rem. Code § 129B.002(a). The Supreme Court upheld the constitutionality of this provision in *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461 (2025).

Of note, this Court has enjoined House Bill 18 ("HB 18"), a law that regulates social media websites, in two other cases before it involving the same Plaintiffs: *SEAT v. Paxton*, 765 F. Supp. 3d 575 (W.D. Tex. 2025), and *CCIA v. Paxton*, 747 F. Supp. 3d 1011 (W.D. Tex. 2024), appeals docketed, Nos. 24-50721, 25-50096 (5th Cir.). In those decisions, this Court found that portions of HB 18 violated the First Amendment because those provisions (1) restricted minors' access to only certain digital services providers based on their content, warranting strict scrutiny, (2) were not narrowly tailored to a compelling state interest, and (3) were appropriately invalidated facially. The Court will now turn to the background of this case and then examine Plaintiffs' constitutional challenge.

### A.  The Parties

Plaintiffs are Texas-based minors, who use apps, and SEAT, an organization whose members include minors, who allege that the Act violates their rights under the First and Fourteenth Amendments. (Compl., Dkt. 1, at 23–32). Plaintiff SEAT represents a coalition of Texas students—from middle school to college-age—who seek to increase youth participation in policymaking, including through connecting with coalition members through mobile apps like Instagram, Slack, GroupMe, and Signal. (Decl. of Hayden Cohen (hereinafter "Cohen Decl."), Dkt. 7, at 1–3). Plaintiff M.F. is 17 years old and uses apps and paid content to read the news, learn about internships, edit photographs, study for school, and prepare for debate team activities. (Decl. of M.F. (hereinafter "M.F. Decl."), Dkt. 9, at 1–3). M.F. uses a wide variety of apps covered by the Act including Instagram, YouTube, Pinterest, Reddit, TikTok, Khan Academy, Apple TV, and X, as well as Lightroom for photo editing, and Band and Remind for student clubs. (*See id.* at 2–5). Plaintiff Z.B. is 16 years old and a student journalist, who uses apps to socialize, follow the news, rent

3

movies, prepare for standardized tests, and publish original content. (Decl. of Z.B. (hereinafter "Z.B. Decl."), Dkt. 8, at 1–4). Z.B. uses apps covered by the Act such as Prime Video, Discord, the CNBC News App, as well as Instagram, Reddit, ChatGPT, Substack, and Citizen. (*See id.* at 1–6).

Paxton is the sole Defendant in this suit. He is the Attorney General of Texas, sued in his official capacity. (Compl., Dkt. 1, at 3). Paxton has authority to enforce SB 2420 because SB 2420 classifies violations as "deceptive trade practice[s]," which delegates enforcement authority to the Consumer Protection Division of the Attorney General's office. S.B. 2420 § 121.101; Tex. Bus. & Com. Code §§ 17.45(8), 17.46.

B. SB 2420

1. Coverage Definition

The Act governs "app stores" operating in Texas and "software application developers" offering apps to users in Texas through app stores. *See* Tex. Bus. & Com. Code §§ 121.002(2), 121.024, and 121.051. The Act defines "app stores" as any website, software, or other electronic service "that distributes software applications . . . to the user of a mobile device[.]" Tex. Bus. & Com. Code § 121.002(2). The Act also applies to "software application developers" who make software available to users in Texas "through an app store[.]" *Id.* § 121.051. It is not disputed that this definition includes apps providing a wide variety of information, content, and forms of expression protected by the First Amendment, such as Coursera, Spotify, YouTube, ESPN, Kindle, the Austin-American Statesman app, and the New York Times app, to name a small few.

The Act does not apply to predownloaded apps (such as Apple Music or iMessage on an iPhone). The Act also exempts applications that provide users "with direct access to emergency services," apps operated by or in partnership with "government entit[ies]" which do not require "the user to create an account," and apps "operated by or in partnership with a nonprofit" that

"develops, sponsors, or administers a standardized test used for" admission to or placement "in a postsecondary educational institution." *Id.* § 121.022(h).

### 2. Requirements

#### (a) Age Rating and Display

The Act imposes new duties on app developers and app stores to implement the State's prescribed age rating system and display this system to users. Developers must assign an age rating to every app and every feature available for in-app purchase based on four age categories:

- younger than 13 (child);
- at least 13 and younger than 16 (younger teenager);
- at least 16 and younger than 18 (older teenager); and
- at least 18 (adult).

S.B. 2420 §§ 121.052(a), 121.021(b). After an app developer has selected an age rating, the developer must provide app stores with their selected age rating and the "specific content or other elements that led to each rating[.]" § 121.052(b). App developers are subject to liability if they "knowingly misrepresent[] an age rating or reason for that rating." § 121.056(a)(2). App stores are then required to display the age rating assigned by the developer, and the specific content that led to the rating. §§ 121.023(a)−(b); 121.022(f)(1).

#### (b) Age Verification and Parental Consent

Before anyone in Texas may download apps from an app store, or paid content within an app, the store must use "a commercially reasonable method" to "verify the individual's age category." *Id.* § 121.021(a). If the store determines that the user is under 18, it must deny her access to the content until she "affiliate[s] with a parent account belonging to [her] parent or guardian." *Id.* § 121.022(a). To that end, app store owners are also required to use "a commercially reasonable

5

method" to verify that the prospective parent account in fact belongs to an adult with "legal authority to make a decision on behalf of the minor." *Id.* §§ 121.021(a), 121.022(b)(1)–(2).

The Act requires parental consent before a minor "make[s] a purchase in or using" an app, *id.* § 121.022(d)(3). Consent requires providing the parent with the app's state-mandated "age rating," based on one of several defined "age categories," as well as the "content or other elements" underlying the rating. *Id.* §§ 121.022(f)(1)(A)–(E), 121.052. Teens who cannot obtain consent may not access the app or content. *Id.* App stores also must share consent information with app developers, *id.* § 121.024(1), who must prohibit teens from accessing their apps or paid content absent consent, *id.* § 121.054. Parents must separately consent to "each individual download or purchase sought by the minor[,]" *id.* § 121.022(e)(1), and are prohibited from granting "blanket consent to authorize multiple downloads or purchases[,]" *id.* § 121.026(a)(3).

### (c)  "Material Change" Notifications

The Act mandates that app stores revoke minors' access to an application whenever its content rating, "functionality," or "user experience" undergoes a "material[] change[]," Tex. Bus. & Com. Code §§ 121.022(g), 121.053(b). Parents must newly consent whenever the application's content ratings, "functionality," or "user experience" undergoes a "material[] change[]." *Id.* §§ 121.022(g), 121.053(b).

### (d)  Penalties

An app store that fails to enforce the State's restrictions may face penalties of up to $10,000 per violation under the Texas Deceptive Trade Practices Act. *Id.* §§ 17.01, 17.46.

### 3. Procedural History

Plaintiffs sued Paxton on October 16, 2025 and filed their motion for preliminary injunction on the same day. (Dkts. 1, 5). Paxton filed a response, (Dkt. 28), and Plaintiffs filed a reply in support, (Dkt. 31). The Court also considered an amicus brief filed by The Reporters Committee

6

for Freedom of the Press, Student Press Law Center, Advance Publications, Inc., The Associated Press, and The New York Times Company in support of Plaintiffs' motion for preliminary injunction. (Dkt. 35). The Court held a hearing on the motion for preliminary injunction on December 16, 2025, and heard arguments from both sides. (Minute Entry, Dkt. 37).

### III. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy requiring a movant to "unequivocally show the need for its issuance." *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050–52 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### IV. DISCUSSION

1. Plaintiffs Have Standing

Plaintiffs M.F., Z.B., and SEAT have standing to bring their claims against Paxton. Standing requires a plaintiff to show they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Book People, Inc. v. Wong*, 91 F.4th 318, 328 (5th Cir. 2024). First, M.F. and Z.B. are Texas teens who respectively use and plan to continue to use apps and paid content to read news, edit photographs, study, and conduct research for school activities and to socialize, study, report stories, follow current events, and publish information about financial literacy and study skills to an audience of over 1 million teens. (M.F. Decl., Dkt. 9, at 1–3; Z.B. Decl., Dkt. 8, at 1–3). Second, M.F. and Z.B.'s ability to use apps would allegedly be curtailed or impeded by SB 2420. Finally, a

7

court order enjoining SB 2420 would likely redress their claimed injuries because app developers and app stores would not have to comply with SB 2420.

SEAT has associational standing. First, SEAT members are Texas teens who use mobile apps and allege SB 2420 will cause them injury. (Cohen Decl., Dkt. 7, at 1–3). Second, SEAT's challenge to SB 2420 is directly related to their purpose of increasing youth participation in policymaking in part through the use of apps. (*Id.*). Third, participation by SEAT's individual members is not necessary because their claims can be proven with evidence from representative members.

Having reviewed the briefs and supporting affidavits, the Court agrees that Plaintiffs have standing. While the Court finds standing exists, the Court notes that Paxton did not contest Plaintiffs' standing to bring suit. In fact, Paxton did not raise standing in his response brief to the motion for preliminary injunction and conceded at the hearing that Plaintiffs have standing to bring their challenge against SB 2420. Indeed, as Paxton noted at the hearing, Paxton did not file a motion to dismiss challenging standing of Plaintiffs and instead chose to file an answer. The Court will turn next to the merits of the motion for preliminary injunction.

2. Level of Scrutiny

The threshold question is what level of scrutiny applies to SB 2420. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 637 (1994). A law cannot "single[] out specific subject matter for differential treatment," by using the "function or purpose" of speech as a stand-in for its content, without being subject to strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64, 169 (2015). "[L]aws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference." *Id.* at 170. When the government favors some speakers over others for their content, the law must be subject to strict scrutiny. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 619–21 (2020) (controlling plurality op.); *Reed*, 576 U.S. at 163 ("Government regulation of

8

speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.").

SB 2420's coverage definition supports a finding that it is content-based. SB 2420 excludes apps operated by nonprofits that provide "direct access to emergency services," "standardized test[s]," or support applications for "admission to" or placement "in a postsecondary educational institution[.]" Tex. Bus. & Com. Code § 121.022(h). As such, the challenged provisions' application "depend[s] entirely on the communicative content" a service provides. *Reed*, 576 U.S. at 164. For example, Plaintiffs would not face a barrier accessing an app from the College Board but would be unable to access an app from a newspaper. Because the Act "defin[es] regulated speech by particular subject matter" and "singles out specific subject matter for differential treatment," *id.* at 163, 169, it is subject to strict scrutiny. *See, e.g.*, *Barr*, 591 U.S. at 619−21 (law was content-based by virtue of its content-based coverage scheme). This Court similarly found that the coverage definition in HB 18 burdened speech based on its content and applied strict scrutiny as a result. *SEAT*, 765 F. Supp. 3d at 592−95; *CCIA*, 747 F. Supp. 3d at 1032.

Moreover, even if the coverage definition did not distinguish based on content, SB 2420 specifically sought to shield minors from certain speech the State deems objectionable or harmful (as Texas acknowledged at the hearing) which is a content-based justification and would still warrant strict scrutiny. *See Boos v. Barry*, 485 U.S. 312, 321 (1988) (considering a law content-based where it "regulate[d] speech due to its potential . . . impact"); *Ashcroft v. Am. C.L. Union*, 542 U.S. 656, 670 (2004) (strict scrutiny applies to laws "designed to protect minors from viewing harmful materials"). Materials from the legislative record further support the conclusion that the Act was passed for this reason. (*See* Ex. 5 to Declaration of Adam Sieff (hereinafter "Sieff Decl."), Dkt. 6-5, at 1 (committee report claims the Act addresses "growing concerns" that "pervasive[]" access to apps

harms "children and teens"); Ex. 7 to Sieff Decl., Dkt. 6-7 (bill author states the Act aims "to protect our children from inappropriate" and "dangerous content")).

Paxton argues that the targeted advertising requirements constitute a regulation on commercial speech, such that strict scrutiny does not apply. (Resp., Dkt. 28, at 17). "Commercial speech is speech 'that *proposes* a commercial transaction.'" *Serafine v. Branaman*, 810 F.3d 354, 365 (5th Cir. 2016) (quoting *N. Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, (1989)). The Act is not limited to commercial speech. And restrictions on what content can be bought and sold may be subject to strict scrutiny. *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 789 (2011) (law regulating sale or rental of violent video games subject to strict scrutiny). The Act does not limit its coverage to speech that proposes a commercial transaction. As described above, the Act covers a wide variety of speech, including consuming news, social media, and entertainment. And, if the legislature intended to cover only commercial speech, as Paxton suggests, it could have easily added clarifying language saying as much. "The best course, as always, is to stick with the ordinary meaning of the text that actually applies." *Corner Post, Inc. v. Bd. of Governors*, 603 U.S. 799, 817 (2024). SB 2420 makes no such distinction. Thus, SB 2420 is not a regulation on commercial speech; strict scrutiny applies.

Rather than apply strict scrutiny, Paxton suggested at the hearing that the Court could enjoin only the coverage definition, such that the law would be subject to intermediate scrutiny. This argument does not affect the Court's overall decision to enjoin the law because (1) the law is also content-based due to its focus on content harmful to minors, and (2) the law would not pass intermediate scrutiny, as described below. Paxton also noted at the hearing, however, that those exceptions were added as amendments, chosen by legislators as part of the overall balance that they struck with one another. To sever the coverage definition of the law alone would require this Court to rewrite the law and "to foresee which of many different possible ways the legislature might

10

respond to the constitutional objections we have found." *Randall v. Sorrell*, 548 U.S. 230, 262 (2006). The Court will decline to rewrite the statute by enjoining only its scope of coverage.

3. SB 2420 and Strict Scrutiny

Because strict scrutiny applies, Paxton must prove that SB 2420 is "the least restrictive means of achieving a compelling state interest." *Free Speech Coalition*, 606 U.S. at 484. Paxton has not proven this. First, it is far from clear that Texas has a compelling interest in preventing minors' access to every single category of speech restricted by SB 2420. State interests in protecting minors exist; for example, the State has a compelling interest in preventing minors from accessing information that facilitates child pornography or sexual abuse. *See Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989) ("[T]here is a compelling interest in protecting the physical and psychological well-being of minors."). On the other hand, nothing suggests Texas's interest in preventing minors from accessing a wide variety of apps that foster protected speech (such as the Associated Press, the Wall Street Journal, Substack, or Sports Illustrated) is compelling. *See Brown*, 564 U.S. at 794 ("No doubt a State possesses legitimate power to protect children from harm, but that does not include a free-floating power to restrict the ideas to which children may be exposed.") (internal citation omitted). While SB 2420 may have some compelling applications, the categories of speech it restricts are so exceedingly overbroad that Paxton likely cannot show a compelling state interest.

Analogizing to tobacco or alcohol use, Paxton argues that Texas has an interest in regulating products and services "which pose health hazards, or which may be addictive" to minors. (Resp., Dkt. 28, at 13). However, Paxton does not cite evidence to substantiate the assertion that downloading an app of any kind without parental permission poses a health hazard to minors. That argument gestures toward Texas's interest in preventing social media addiction, but SB 2420's coverage sweeps far wider—all apps are restricted, beyond social media, as described above. So too, SB 2420 does not limit its scope to apps that use addictive algorithms designed to encourage

11

prolonged use, or apps that are responsible in particular for causing excessive screen time. As one example, SB 2420 restricts access to apps that seek to promote physical or mental health, such as mindfulness apps like Calm, fitness apps like Strava, or therapy providers like BetterHelp. Along those lines, Plaintiffs cite evidence that apps benefit young people and that minors' access to app-based content is not linked to mental-health problems. (Sieff Decl., Dkt. 6-30, at 22–23). Plaintiffs also attest that they use apps to advance their studies and civic engagement, as described above.

Even accepting that Texas has a compelling interest in requiring age-verification and parental permission to mitigate an overall mental- or physical-health effect of mobile phone app use—an interest which Texas has not offered evidence of at this stage—SB 2420 is not narrowly tailored to that interest. Rather, Texas "could have easily employed less restrictive means to accomplish its protective goals, such as by (1) incentivizing companies to offer voluntary content filters or application blockers, [and] (2) educating children and parents on the importance of using such tools." *NetChoice, LLC v. Bonta*, No. 23-2969, 113 F.4th 1101, 1121 (9th Cir. Aug. 16, 2024); *see also, e.g.*, *SEAT*, 765 F. Supp. 3d at 696, 698–99; *CCIA*, 747 F. Supp. 3d at 1036–37. In this case, one less restrictive means than SB 2420 (as Paxton acknowledged at the hearing) would have been to narrowly target regulations toward apps that the State demonstrates have specific addictive qualities. To the state interest of preventing minors from accessing harmful material, Texas has existing laws requiring age-verification for digital services providers containing one-third or more sexual material harmful to minors. Tex. Civ. Prac. & Rem. Code § 129B.002(a). Paxton has not shown that methods employed by SB 2420—broadly restricting app downloads and content within apps, with few content-based exceptions—are necessary to prevent minors from accessing the subset of apps which contain harmful material. Because it restricts almost all apps and content within apps, SB 2420 does not employ "the least restrictive means" to stop minors from accessing harmful material.

*See United States v. Playboy Ent. Grp.*, 529 U.S. 803, 813 (2000) (quoting *Sable Commc'ns of Cal., Inc.*, 492 U.S. at 126).

Also problematically, the law is under- and over-inclusive. That a law "is wildly underinclusive when judged against its asserted justification . . . is alone enough to defeat it." *Brown*, 564 U.S. at 802. The law is under-inclusive: SB 2420 specifically cuts teenagers off from wide swaths of the critical "democratic forum[] of the Internet" even though the same content offered via apps remains available to minors via pre-downloaded apps like Safari (or in stores). *Reno v. Am. C.L. Union*, 521 U.S. 844, 868 (1997). The law is also over-inclusive: its attempt to block children from accessing harmful content on select apps, Texas also prohibits minors from participating in the democratic exchange of views online by curtailing their access to all apps.

So too, Texas offers no evidence that even some or most of the apps covered cause mental- or physical-health detriments for youth. Paxton gestures generally to the impacts of social media on youth, (Resp., Dkt. 28, at 15), and calls the apps at issue a "health hazard," (*id.* at 13). At the hearing, Paxton suggested, too, that the interest underlying the law was mitigating the impact of excessive phone use and overall screen time, algorithmic targeting, and artificial intelligence on youth users of social media. But nothing in the record suggests, for instance, that teens suffer from mental health disorders due to using an app for their debate team preparation (as Plaintiff M.F. does), reading the news on CNBC (as Plaintiff Z.B. does) or the New York Times, or accessing e-books via Kindle, even though those apps are age-restricted and subject to parental override under the Act in the same way as social media. Because it bans minors from downloading apps and content from all apps, not, for example, a narrowly tailored subset of apps deemed harmful or addictive based on evidence, the law is more over- and under- inclusive than HB 18, which this Court previously enjoined. *SEAT*, 765 F. Supp. 3d at 597; *CCIA*, 747 F. Supp. 3d at 1036−37.

In sum, SB 2420 fails strict scrutiny. Even accepting that Texas could pass legislation to counter harmful effects of social media use on minors' mental or physical health, Paxton has not demonstrated that age-screening everyone in Texas and banning minors from accessing app store content without individualized parental consent is the least restrictive method to eliminate that harm. *Playboy*, 529 U.S. at 827.

While not at issue, the Court briefly addresses the Act's scrutiny under intermediate scrutiny. A speech restriction can survive intermediate scrutiny only if the government proves the law (1) serves a "real" and "not merely conjectural" government interest "unrelated to the suppression of free expression," (2) "will in fact" serve that interest in "a direct and material way," and the restriction on First Amendment freedoms is not greater than is "essential to the furtherance of that interest." *Turner Broad. Sys., Inc.*, 512 U.S. at 662–64 (citation omitted). On the current record, where Texas has not offered any evidence connecting the Act's goals to its methods, the Court finds that SB 2420 would fail intermediate scrutiny as well.

Finally, the Court finds that the provisions cannot be severed from one another. Texas laws cannot be severed if "all the provisions are connected in subject-matter, dependent on each other, operating together for the same purpose, or otherwise so connected in meaning that it cannot be presumed the legislature would have passed the one without the other." *Builder Recovery Servs., LLC v. Town of Westlake*, 650 S.W.3d 499, 507 (Tex. 2022) (cleaned up); *Villas v. City of Farmers Branch*, 726 F.3d 524, 537 (5th Cir. 2013) (holding that state law applies when determining whether a state statute is severable). That is the case here. For example, the parental-consent provisions could not operate without the age-verification requirements, and requiring age-verification without parental override would not achieve the Act's ends of limiting minors' access to apps. The Court finds the statute not severable.

4. Vagueness

In addition to their First Amendment challenge, Plaintiffs argue that provisions of SB 2420 are void for vagueness. (Mot. Prelim. Inj., Dkt. 5, at 26–27). "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). "A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir.), *cert. denied* 144 S. Ct. 348 (2023). "A regulation is void for vagueness when it is so unclear that people 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). The Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less

severe." *Id.* at 498–99. However, if "the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Id.* at 499.

The Act requires app developers to provide notice of "any significant change to the terms of service or privacy policy." § 121.053(a). A change is significant if it:

1. changes the type or category of personal data collected, stored, or shared by the developer;

2. affects or changes the rating assigned to the software application under Section 121.052 or the content or elements that led to that rating;

3. adds new monetization features to the software application, including: (A) new opportunities to make a purchase in or using the software application; or (B) new advertisements in the software application; or

4. materially changes the functionality or user experience of the software application.

§ 121.053(b). Plaintiffs argue that the Act fails to define "material[] changes" and does not explain what aspects of an app relate to its "functionality or user experience." § 121.053(b). As the law stands, Paxton could seek to hold an app developer liable for violating this provision, for example, for each new song added to Apple Music or, as a less draconian example, when a new category of content is made available (e.g., when Spotify added podcasts alongside music). Both scenarios are plausible, so the argument goes.

The Court agrees that this provision is unconstitutionally vague. Without definitions and standards, the spectrum of interpretations is vast and could lead to selective or disparate enforcement. *See NetChoice v. Carr*, 789 F. Supp. 3d 1200, 1231 (N.D. Ga. 2025). The provision also likely incentivizes over-censorship, as app stores may broadly revoke access to avoid liability and steer "wide[] of the unlawful zone," which further threatens to restrain speech. *See Counterman v. Colorado*, 600 U.S. 66, 77−78 (2023) (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)). Without

16

proper guidance, the provision "interferes with the right of free speech" in a way that is constitutionally unacceptable and must be enjoined. *Vill. of Hoffman*, 455 U.S. at 499.

5. Facial Invalidity

As the next step in the analysis, this Court must determine whether the law is facially invalid. Even if SB 2420 is a content-based regulation and fails strict scrutiny, it does not follow as a matter of course that the law is facially invalid. In the First Amendment context, facial challenges can only succeed if litigants show that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021) (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)). So, a law regulating First Amendment activity may only be struck down in its entirety if its "unconstitutional applications substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024).

*Moody*, including the majority opinion and all four concurrences, emphasized that courts should not treat facial challenges lightly, even in the First Amendment context. It clarified that courts should "address the full range of activities the laws cover and measure the constitutional against the unconstitutional applications." *Id.* That analysis requires a two-step process. First, courts must "assess the state laws' scope" and ask, "What activities, by what actors, do the laws prohibit or otherwise regulate?" *Id.* Second, a court must "decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id.* at 725. Only after making these inquiries can a court determine if a law's "unconstitutional applications substantially outweigh its constitutional ones." *Id.* at 724. The test boils down to a comparison between the law's constitutional and unconstitutional applications. *See United States v. Edge Broad. Co.*, 509 U.S. 418, 430 (1993) ("[T]he validity of [a] regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interest in an individual case.") (quoting *Ward*, 491 U.S. at 801); *NetChoice, LLC v. Bonta*, No. 23-2969, 2024 WL 3838423, at

17

*8 (9th Cir. Aug. 16, 2024) (slip op.) (affirming facial challenge where strict scrutiny regulation "raises the same First Amendment issues" "in every application to a covered business"); *Stevens*, 559 U.S. at 473 n.3 (noting that overbroad law was facially invalid).

Here, the requirements exclusively target speech, only a small portion of which falls outside First Amendment coverage. For example, child pornography does not receive First Amendment protection. *See New York v. Ferber*, 458 U.S. 747, 765 (1982). But, the analysis of SB 2420's facial validity looks to its applications where it "actually authorizes or prohibits conduct," not applications that are already covered by other laws. *See City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015); *see also Spirit Aerosystems, Inc. v. Paxton*, 142 F.4th 278, 286–87 (5th Cir. 2025). Texas already restricts harmful online content for minors, requiring commercial entities publishing online content to monitor whether one-third or more of their content is sexual material harmful to minors and, if so, to age-verify users. *Free Speech Coalition, Inc.*, 606 U.S. at 461. Thus, only in the vast minority of applications would SB 2420 have a constitutional application to unprotected speech not addressed by other laws. Because SB 2420 is unconstitutional in the vast majority of its applications, it is properly facially enjoined.

### 6. Prior Restraints

Separate from their other arguments, Plaintiffs argue that the challenged restrictions are unconstitutional because they impose a "system of prior restraint." (Mot. Prelim. Inj., Dkt. 5, at 16–18). Finding the challenged provisions invalid under strict scrutiny, and finding the "material change" provision unconstitutionally vague, the Court need not reach the issue.

### 7. Remaining Preliminary Injunction Factors

Plaintiffs show that they will suffer irreparable injury in the absence of an injunction. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v.*

*Burns*, 427 U.S. 347, 373 (1976)). Plaintiffs have submitted declarations attesting to their chilled speech because of SB 2420, which suffices to show irreparable harm. Plaintiffs describe how they cannot use a myriad of apps without parental permission, and how SB 2420 frustrates their speech.

The balance of equities and public interest follow likelihood of success. These last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (internal citation omitted). Because the Court has found that Plaintiffs have shown a substantial likelihood of success on the merits of their First Amendment claims, the Court finds that an injunction is in the public interest. *See id.*; *see also, e.g., Book People, Inc.*, 91 F.4th at 341 ("Because Plaintiffs are likely to succeed on the merits of their First Amendment claim, the State and the public won't be injured by an injunction of a statute that likely violates the First Amendment.").

## V. CONCLUSION

Plaintiffs have shown that SB 2420 is a content-based statute and is therefore subject to strict scrutiny. Plaintiffs have carried their burden to demonstrate that the law's restrictions on speech fail strict scrutiny and should be facially invalidated. Because Plaintiffs also show that the remaining equitable factors weigh in their favor, the Court preliminarily enjoins Paxton from enforcing those provisions.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Preliminary Injunction, (Dkt. 5), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Ken Paxton, in his official capacity as Attorney General of Texas, including his officers, officials, agents, employees, and any other persons or entities acting on his behalf, is preliminarily **ENJOINED** from taking any action to implement or enforce Tex. Bus. & Com. Code §§ 121.021, 121.022(a)-(b), 121.022(d)-(g), 121.024, 121.026(a)(3), 121.026(b), 121.053, 121.054, and 121.056(c).

**SIGNED** on December 23, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE